THE STATE OF OHIO, APPELLANT AND CROSS-APPELLEE, *v.*
BROOKS, APPELLEE AND CROSS-APPELLANT.

[Cite as State *v.* Brooks (1989), 44 Ohio St. 3d 185.]

(Nos. 88-353 and 88-484—Submitted April 4, 1989—Decided August 9, 1989.)

186

*Lynn C. Slaby,* prosecuting attorney, and *Philip Bogdanoff,* for appellant and cross-appellee.

*John L. Wolfe,* for appellee and cross-appellant.

BROGAN, J. On September 14, 1986, Danny W. Fisher, a student at Kent State University, was driving a taxicab for the City Yellow Cab Company in Akron, Ohio. He was dispatched to pick up a passenger. Shortly after the defendant and two women got into Fisher's cab, the defendant became embroiled in an argument with Fisher. After Fisher ordered the defendant out of the cab, the defendant and Fisher got out of the cab, and the defendant drew a revolver.

Fisher then got back into the cab with the two women and attempted to drive away. Brooks pursued the cab on foot, and some distance away Fisher permitted the women to exit. Brooks caught up with the cab, and according to Fisher fired his weapon at the cab while Fisher was seated behind the wheel. Brooks and the women fled the scene, and Fisher reported the incident to the police and shortly thereafter identified a photograph of the defendant as his assailant. These events form the basis of the first two counts of the indictment charging the defendant with felonious assault and having a weapon while under disability, as well as firearm specifications and specifications alleging a prior conviction of violence.

On November 5, 1986, Lieutenant Thomas Tomlinson and Detective Thomas L. Pozza of the Cuyahoga Falls Police Department went to the State Road Inn in Cuyahoga Falls to arrest Crystal Young on a bench warrant. Records at the motel indicated Young was registered at the motel. The officers went to her room with the motel manager, and when no one answered the officers' knocks at her door, the motel manager opened the motel room door and the officers entered. Tomlinson found Brooks, who had been sleeping, lying on a bed, and he asked the defendant if Young was present. After the defendant stated, "she * * * [had] gone," Tomlinson discovered a loaded .32 caliber handgun on a nightstand next to the defendant's bed. Pozza also discovered a white powdery substance in two small Ziploc bags on a dresser, which substance was later determined to be cocaine. The defendant stated the bags belonged to Young. Brooks was not arrested at that time. After the police discovered that the substance was cocaine, that the firearm was stolen from a Sebron Phillips, and that defendant had a criminal history, they returned to arrest the defendant, but he was no longer there. These events comprised the fifth, sixth and seventh counts of the indictment which charged the defendant with drug abuse, having a weapon while under disability, and receiving stolen property, as well as a specification alleging a prior conviction

for a crime of violence and a firearm specification.

On November 7, 1986, Geneva Barker encountered Brooks at the Hub-Lon Lounge in Akron. She testified that the defendant entered the lounge without paying a cover charge, although he did pay upon exiting. She stated they later engaged in a heated conversation when he returned, whereupon the defendant drew a handgun and pointed it at her face and stated, "Bitch, I will kill you." She stated that although she informed the defendant she was not afraid of him, she in truth was quite scared. After the manager went to call the police, the defendant left the bar. These events comprise the third and fourth counts of the indictment charging the defendant with felonious assault and having a weapon while under disability. Also included in the counts were a firearm specification and a prior-conviction-of-violence specification.

On November 24, 1986, Brooks was arrested as a result of a dispatch to the Akron police that a suspicious person had a .38 caliber revolver. Brooks was arrested in a vehicle matching the description supplied by two women. Brooks was found sitting in the vehicle's back seat. The vehicle was driven by a woman named Pamela Kidd. Brooks was searched and no weapon was found. He was arrested because a bench warrant was extant for him at that time. Police then searched the trunk of the automobile and discovered a loaded .38 caliber Rossi revolver and a piece of brown paper containing white powder later determined to be cocaine.

Brooks was then transported to the Akron Corrections Facility where he was searched again and a jail employee discovered cocaine in the defendant's pants pocket. These events comprise the eighth and tenth counts of the indictment charging the defendant with drug abuse and having a weapon while under disability, as well as two specifications of a prior conviction of a crime of violence.

The defendant stipulated his prior conviction of manslaughter and the defense presented one witness who was present at the Hub-Lon Lounge who denied seeing any disturbance between the defendant and Barker. The defense then moved for a continuance because a defense witness, Joseph Cacioppo, was unavailable. The defense counsel stated he had tried to contact Cacioppo but the witness was in New York visiting his daughter.

When defense counsel acknowledged he had not subpoenaed Cacioppo for the trial, the court denied the defendant a continuance, noting the case had previously been continued at the request of the defendant. The defendant spoke up and stated, "[i]t's my knowledge that Mr. Joseph Cacioppo was supposed to be an eyewitness of the shooting at the cab driver. No one has ever attempted to contact Mr. Cacioppo." The defendant asked the court for a continuance so he could try to find Cacioppo. The court denied the defendant's request. Defense counsel failed to proffer what testimony Cacioppo would have provided the jury in the event a continuance was granted by the court. The defense then rested its case.

The question certified to this court is whether the mere pointing of a deadly weapon, without more, is sufficient evidence of the offense of felonious assault. In reversing and vacating the defendant's conviction for feloniously assaulting Geneva Barker, the court of appeals noted:

"Brooks contends that the state failed to prove each element of the felonious assault of the barmaid. R.C. 2903.11 provides, in pertinent part:

" '(A) No person shall knowingly: [" '* * *]

" '(2) Cause or attempt to cause physical harm to another by means of a deadly weapon * * *.'

"Specifically, Brooks asserts that the state failed to prove the element of attempt to cause physical harm. To prove this element, the state is required to show that Brooks took a direct, ineffectual step toward causing physical harm. *State* v. *Kline* (1983), 11 Ohio App. 3d 208.

"At trial, the state's sole witness of the felonious assault of the barmaid was the barmaid herself. She testified that Brooks pointed a gun at her and threatened to kill her. The only defense witness was a bartender of the same bar. The bartender testified that she saw Brooks by the entrance of the bar, but did not see a gun. She further testified that she did not see or hear any altercation between Brooks and the barmaid because she was serving other customers and the music in the bar was playing loud.

"While the pointing of the gun at the barmaid clearly constituted aggravated menacing, this conduct, with nothing more, is insufficient to show that Brooks in fact attempted to cause physical harm to the barmaid. See *State* v. *Kline, supra,* at 208."

In *State* v. *Sunderland, supra,* the defendant, who mistakenly believed that an off-duty police officer driving an automobile was the same person who had previously threatened him, pointed a shotgun at the off-duty police officer and threatened "to blow [his] head off." A struggle for the gun ensued during which the defendant continued to verbally threaten the officer. The officer retrieved a service revolver and ordered the defendant to relinquish the weapon and the defendant complied.

The court of appeals in *Sunderland*

found that the state produced sufficient evidence to sustain a conviction for felonious assault under R.C. 2903.11(A)(2). The court of appeals, citing *State* v. *Tate* (1978), 54 Ohio St. 2d 444, 8 O.O. 3d 441, 377 N.E. 2d 778, noted that this court has determined that in order to sustain a conviction for felonious assault, the state need only demonstrate that the accused pointed a gun at another person, and that it is not necessary to prove that the gun was loaded, or that the accused attempted to pull the trigger or use the gun in any other manner as a deadly weapon.

In overruling the state's motion to reconsider its decision to reverse and vacate Brooks' conviction for the felonious assault of Barker, the court of appeals below noted that this court in *State* v. *Tate* addressed the issue of whether an unloaded gun in the assault of a police officer is a "deadly weapon" under R.C. 2903.11(A)(2), but did not deal with the issue of what constitutes an "attempt to cause physical harm to another." Accordingly, the court found the state's reliance on *State* v. *Tate, supra,* to be misplaced.

In *Tate, supra,* the state produced evidence that the defendant pointed an unloaded gun at a police officer. In a *per curiam* opinion, this court noted at 446, 8 O.O. 3d at 442, 377 N.E. 2d at 779:

"The question to be determined by this court may be stated thus: Did the state present sufficient evidence to prove beyond a reasonable doubt all the elements of the crime of felonious assault where the record demonstrates that the accused pointed a gun at another person, but it is undisputed that the gun was unloaded, that the accused knew it was unloaded, and that the accused made no attempt to pull the trigger or to use the weapon in any other manner as a deadly weapon?

"There is no contention by the defendant that he did not know what he was doing when he pointed the gun at Officer Munaretto. The jury could find from the evidence presented that the defendant acted knowingly when he pointed the gun at the officer.

*"Thus, the only element of the offense of felonious assault at issue in this cause is whether the unloaded gun used in the assault was a 'deadly weapon.'*

"That question was determined by this court in *State* v. *Meek* (1978), 53 Ohio St. 2d 35, where the court held that an unloaded gun used in the course of a robbery was a 'deadly weapon.' Since an unloaded gun used in a robbery has been determined to be a 'deadly weapon,' an unloaded gun used in an assault is likewise a 'deadly weapon.' " (Emphasis added.)

Chief Justice Celebrezze dissented and noted as follows:

"Conspicuous by its absence is any reference, within the majority opinion, to evidence tending to prove the second element of the offense of felonious assault, viz., to cause or attempt to cause physical harm.

"The majority concedes that the gun was unloaded, that appellee knew it was unloaded, and that no attempt was made to pull the trigger or to use the gun as a bludgeon. Thus, it would seem that appellee did not knowingly intend to cause physical harm, did not in fact cause physical harm, and did not commit a direct ineffectual act toward that result.

"Certainly appellee's behavior was criminal and warrants punishment. However, I cannot fairly vote to uphold the conviction on the instant charge since the prosecution failed to prove a central element of that crime. In my opinion appellee should have been charged under R.C. 2903.21, the aggravated menacing statute, which section proscribes knowingly causing another to believe that the offender will cause serious physical harm to that person. Although appellee's conduct fits squarely within the definition of that crime, aggravated menacing is not a lesser included offense with regard to felonious assault (see *State* v. *Beaty* [1975], 45 Ohio App. 2d 127), and therefore appellee should be discharged from custody." *Id.* at 446-447, 8 O.O. 3d at 442, 377 N.E. 2d at 779.

Although this court is a collegial body and the majority can be fairly presumed to consider the views of the dissenting members of the court, the majority specifically confined its resolution of the *Tate* opinion to the issue of whether the unloaded gun wielded by Tate was a "deadly weapon" as defined in R.C. 2923.11.

It is thus incumbent upon us now to resolve whether the pointing of a deadly weapon is an "attempt to cause physical harm" to another by means of a deadly weapon as encompassed in the definition of "felonious assault."

R.C. 2903.11 in pertinent part provides:

"(A) No person shall knowingly:

"* * *

"(2) Cause or attempt to cause physical harm by means of a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code."

R.C. 2923.02(A) defines "attempt" as follows:

"No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct which, if successful, would constitute or result in the offense."

In *State* v. *Woods* (1976), 48 Ohio St. 2d 127, 2 O.O. 3d 289, 357 N.E. 2d 1059, paragraph one of the syllabus, this court held that "[a] 'criminal attempt' is when one person purposely

does or omits to do anything which is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime. To constitute a substantial step, the conduct must be strongly corroborative of the actor's criminal purpose. (R.C. 2923.02[A] construed).''

In *Woods,* the defendant and another defendant, Reaves, decided to rob the manager of the store as he came out with the store's receipts. The defendants began to ''case'' the premises. Reaves climbed on the roof with a gun while Woods stayed behind as lookout. Reaves then climbed back down, apparently having heard a nearby fire engine siren, and then Reaves and Woods walked away.

This court found Reaves' actions to be plainly a substantial step in the planned robbery, and strongly corroborative of his and Woods' criminal purpose. The court found no error in the trial court's finding that this conduct constituted attempted robbery. Justice Stern wrote the following:

''The committee comment for this section [R.C. 2923.02(A)] states, in part, that: 'In order to prove an attempt to commit an offense, it must be shown that particular conduct directed toward commission of the offense took place and that such conduct, if successful, would constitute or result in the offense. * * *' This language establishes that the essential elements of a criminal attempt are the *mens rea* or purpose or knowledge, and conduct directed toward the commission of an offense. The statute does not, however, indicate how far this conduct must proceed toward the actual consummation of the crime in order to be considered an attempt to commit that crime. There is also little case law in Ohio on this question, although this court has held that the conduct necessary for a criminal attempt 'need not be the last proximate act prior to the consummation of the felony.' *State* v. *Farmer* (1951), 156 Ohio St. 214, 216, 102 N.E. 2d 11; *Fox* v. *State* (1878), 34 Ohio St. 377. In *Farmer,* an assault with intent to rob was held, at page 217, 'sufficient to justify the triers of the facts in determining beyond a reasonable doubt that the action of the defendant at the time of * * * [an] altercation was action taken to carry out that intent and therefore amounted to an attempt to perpetrate robbery.' In this case, Reaves committed no assault, and the question arises as to whether his acts nevertheless amounted to an attempt to rob.

''American courts have generally agreed that intent to commit a crime does not of itself constitute an attempt, nor does mere preparation. The difficulty is to formulate a standard that excludes preparations prior to an actual attempt to commit a crime, while including, as punishable, those acts which are so dangerously close to resulting in a crime that intervention and arrest by the police are justified, even before the 'last proximate act.' Various tests have been suggested and followed in other jurisdictions. There is a good discussion of this problem and the various approaches in Wechsler, Jones and Korn, The Treatment of Inchoate Crimes in the Model Penal Code of the American Law Institute: Attempt, Solicitation, and Conspiracy. 61 Columbia L. Rev. 571, 573-621. It is not necessary to consider each of the alternative approaches here. Ohio's statutory definitions of criminal offenses in the Revised Code are based largely upon the American Law Institute's Model Penal Code, and the standard adopted in the latter Code appears to us workable, reasonable, and consistent with the language of R.C. 2923.02(A). Under Section 5.01 of the

Model Penal Code, an attempt is when one 'purposely does or omits to do anything which is * * * an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.' To constitute a 'substantial step,' the conduct must be 'strongly corroborative of the actor's criminal purpose.' The application of this standard will of course depend upon both the nature of the intended crime and the facts of the particular case. A substantial step in the commission of a robbery may be quite different from that in arson, rape, or some other crime. But this standard does properly direct attention to overt acts of the defendant which convincingly demonstrate a firm purpose to commit a crime, while allowing police intervention, based upon observation of such incriminating conduct, in order to prevent the crime when the criminal intent becomes apparent." *Id.* at 131-132, 2 O.O. 3d at 291-292, 357 N.E. 2d at 1063.

Comment 6(a) to Section 5.01 of the Model Penal Code explains the requirements of "substantial step" and corroboration of the actor's criminal purpose:

"(a) *Requirements of 'Substantial Step' and Corroboration of Purpose.* Whether a particular act is a substantial step is obviously a matter of degree. To this extent, the Code retains the element of imprecision found in most of the other approaches to the preparation-attempt problem. There are, however, several differences to be noted:

"*First, this formulation shifts the emphasis from what remains to be done, the chief concern of the proximity tests, to what the actor has already done.* That further major steps must be taken before the crime can be completed does not preclude a finding that the steps already undertaken are substantial. It is expected, in the normal case, that this approach will broaden the scope of attempt liability.

"Second, although it is intended that the requirement of a substantial step will result in the imposition of attempt liability only in those instances in which some firmness of criminal purpose is shown, no finding is required as to whether the actor would probably have desisted prior to completing the crime. Potentially the probable desistance test could reach very early steps toward crime, depending on how one assesses the probabilities of desistance; but since in practice this test follows closely the proximity approaches, rejection of a test of probable desistance will not narrow the scope of attempt liability.

"Finally, the requirement of proving a substantial step generally will prove less of a hurdle for the prosecution than the res ipsa loquitur approach, which requires that the actor's conduct itself have manifested the criminal purpose. The basic rationale of the requirement that the actor's conduct shall strongly corroborate his purpose to commit a crime is, of course, the same as that underlying the res ipsa loquitur view. But framed in terms of corroboration, the present formulation does not so narrowly circumscribe the scope of attempt liability. Rigorously applied, the res ipsa loquitur doctrine would provide immunity in many instances in which the actor had gone far toward the commission of an offense and had strongly indicated a criminal purpose. * * *" (Emphasis added.) A.L.I. Model Penal Code and Commentaries, Part I (1985), 329-330.

Some commentators urge that the attempt definition vary with the seriousness of the crime. The more serious the underlying crime, the further back toward preparation the attempt statutes should reach. Garton,

The Actus Reus in Criminal Attempts (1974), 2 Queens L.J. 183, 197-198. Oliver Wendell Holmes, too, would push back the threshold when a more serious offense was intended. Holmes argued that an attempt requires the defendant to achieve "dangerous proximity to success." See *Hyde* v. *United States* (1912), 225 U.S. 347, 388 (Holmes, J., dissenting).

In this case, there would be little doubt that a reasonable jury could convict the defendant of felonious assault if he had pointed his revolver at Barker and either fired or attempted to discharge his weapon in her direction. There is also little doubt that a jury could have convicted the defendant of the crime of aggravated menacing in violation of R.C. 2903.21.

We find no fault with the decision of the Cuyahoga County Court of Appeals in *Sunderland, supra.* In that case, a reasonable jury could have concluded that Sunderland had attempted to cause physical harm to the police officer by means of a deadly weapon. Sunderland pointed the shotgun at the police officer and continued to threaten him even as the officer struggled to wrest the weapon from Sunderland's control. Certainly, the defendant's actions in that case amounted to a substantial step in a course of conduct calculated to cause physical harm to the officer.

The act of pointing a deadly weapon at another, without additional evidence regarding the actor's intention, is insufficient evidence to convict a defendant of the offense of "felonious assault" as defined by R.C. 2903.11 (A)(2). While the pointing of a deadly weapon would undoubtedly justify a jury in concluding that the accused had committed the offense of "aggravated menacing" as defined by R.C. 2903.21, the act of pointing a deadly weapon at another is essentially an equivocal act as it relates to the accused's intention to cause physical harm to another by use of that weapon.[1]

We recognize, however, that experience has demonstrated that many homicides and serious assaults occur in the heat of impassioned arguments. In the case at hand, Barker testified that she and the defendant became embroiled in a volatile argument. She stated that the defendant suddenly drew a revolver and angrily told her that he would kill her. She further stated that the defendant left the bar only when the manager appeared to be summoning the police.

Under these circumstances, we cannot say that a reasonable jury properly instructed could not have concluded that the defendant's actions were "strongly corroborative" of his intent to cause physical harm to Barker by means of his deadly weapon. Accordingly, we find that the court of appeals erred in concluding as a matter of law that the state had failed to produce sufficient evidence upon which the jury could conclude the defendant had committed the offense of felonious assault.

Attached to the third count of the indictment (the felonious assault of Geneva Barker) was a firearm specification pursuant to R.C. 2929.71. The defendant contended in a separate assignment of error in the court of appeals that the evidence as to his guilt of

---

[1] Much of the difficulty presented by this case may be alleviated by legislation presently pending before the legislature, which would amend the aggravated menac- ing statute to make it a felony to knowingly cause another to believe that the offender will cause physical harm by use of a deadly weapon. Senate Bill No. 154.

this specification was against the manifest weight of the evidence because the state failed to prove the revolver allegedly wielded by the defendant was a firearm, to wit, that it was "operable." The court of appeals did not address this assignment, as it contended the reversal of the felonious assault rendered this assignment moot. The state requests that we find that the conviction of the firearm specification was not against the manifest weight of the evidence in the event we affirm the felonious assault conviction as to count three. We decline to decide this issue before the court of appeals has had an opportunity to address this issue in the first instance.

In cross-appellant's first two propositions of law, he contends the trial court erred in denying his motion for separate trials of the separate counts in the indictment.

Crim. R. 8(A) provides:

*"Joinder of Offenses.* Two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, *or* are based on the same act or transaction, *or* are based on two or more acts or transactions connected together *or* constituting parts of a common scheme or plan, *or* are part of a course of criminal conduct." (Emphasis added.)

Crim. R. 14 provides for relief from prejudicial joinder in pertinent part:

"If it appears that a defendant or the state is prejudiced by a joinder of offenses * * * in an indictment * * *, the court shall order an election or separate trial of counts * * * or provide such other relief as justice requires."

In *State* v. *Torres* (1981), 66 Ohio St. 2d 340, 20 O.O. 3d 313, 421 N.E. 2d

1288, syllabus, this court held that "[a] defendant claiming error in the trial court's refusal to allow separate trials of multiple charges under Crim. R. 14 has the burden of affirmatively showing that his rights were prejudiced; he must furnish the trial court with sufficient information that it can weigh the considerations favoring joinder against the defendant's right to a fair trial, and he must demonstrate that the court abused its discretion in refusing to separate the charges for trial." In *Torres,* the defendant claimed he was prejudiced by the joinder for trial of two indictments charging the defendant with two separate drug sales. Judge Black noted at 343 and 344, 20 O.O. 3d at 315, 421 N.E. 2d at 1291:

"Defendant Torres advances two claims of prejudice. First, he asserts that the evidence of the two sales when presented in a single trial created a cumulation of evidence that was prejudicial due to the sheer weight of all the evidence, irrespective of its probative value, which may have led the jury to convict him on both indictments for drug sales. We find no merit in this claim because the jury is believed capable of segregating the proof on multiple charges when the evidence as to each of the charges is uncomplicated. *State* v. *Roberts, supra,* at 175. Joinder may be prejudicial when the offenses are unrelated and the evidence as to each is very weak, *United States* v. *Ragghianti* (C.A. 9, 1975), 527 F. 2d 586 (two separate bank robberies without substantial identification of the perpetrator), but it is otherwise when the evidence is direct and uncomplicated and can reasonably be separated as to each offense, *United States* v. *Catena* (C.A. 3, 1974), 500 F. 2d 1319, certiorari denied 419 U.S. 1047 (one indictment with more than 100 counts of false medical claims). The evidence in the instant case, how-

ever, not only was direct and uncomplicated as to each indictment, but it also was amply sufficient to sustain each verdict, whether or not the indictments were tried together.

"Second, the defendant claims the prejudice arose because the joinder prevented him from using the best defense he had against each of the two charges. His defense of entrapment in the first sale logically required that he contend by his own evidence and in argument that he was entrapped into both the first sale and the second sale. It follows, he claims, that he was unable to assert some other defense to the second sale. But he did not inform the trial court what the other defense was, and he did not recount it on appeal. The mere possibility that the defendant might have a better choice of trial tactics if the counts are separated, or the mere possibility that he might desire to testify on one count and not on the other, is insubstantial and speculative; it is not sufficient to show prejudice. *Wangrow* v. *United States* (C.A. 8, 1968), 399 F. 2d 106, 112, certiorari denied 393 U.S. 933."

In *State* v. *Roberts* (1980), 62 Ohio St. 2d 170, 16 O.O. 3d 201, 405 N.E. 2d 247, syllabus, we held that a defendant may be indicted for both possession for sale of a narcotic drug in violation of R.C. 3719.20(A) and with the sale of a narcotic drug in violation of R.C. 3719.20(B), but may be convicted of only one. In that case, the defendant asserted that the trial court committed prejudicial error, under Crim. R. 14, in overruling his motion for a separate trial of the two offenses alleged to have been committed on separate dates. Justice Herbert observed at 175, 16 O.O. 3d at 204, 405 N.E. 2d at 251:

"A defendant who asserts that joinder is improper has the burden of making an affirmative showing that his rights will be prejudiced thereby.

Cf. *Fisher* v. *United States* (C.A. 8, 1963), 324 F. 2d 775, certiorari denied, 377 U.S. 999; *United States* v. *Gimelstob* (C.A. 3, 1973), 475 F. 2d 157, certiorari denied, 414 U.S. 828. In the cause at bar, defendant's allegation with respect to the cumulation of evidence is premised upon cases wherein courts have found a tendency of some juries in complex trials not to segregate the proof required on each separate offense, but to convict for all crimes on the combined proof offered upon all offenses. Such convictions thus obtained, when the evidence if considered separately would be insufficient to sustain all the convictions, are improper. *Drew* v. *United States* (C.A.D.C. 1964), 331 F. 2d 85, 88; *Dunaway* v. *United States* (C.A.D.C. 1953), 205 F. 2d 23, 26; *United States* v. *Lotsch* (C.A. 2, 1939), 102 F. 2d 35, 36.

"This essential problem is not generally held to be present, however, where the evidence relative to the various charges is direct and uncomplicated, so that the jury is believed capable of segregating the proof on each charge. *Drew* v. *United States, supra.* In our view, the direct and substantial nature of the state's case herein debilitates defendant's assertion that the jury based its finding of guilt upon a cumulation of the evidence. See *Harrington* v. *California* (1969), 395 U.S. 250; *Langford* v. *United States* (C.A.D.C. 1959), 268 F. 2d 896; *Maurer* v. *United States* (C.A.D.C. 1955), 222 F. 2d 414. Moreover, defendant has not shown that the proof for an offense for which he was convicted would have been insufficient had these cases not been joined in the same trial. See *United States* v. *Lotsch, supra.*"

Cross-appellant contends the misjoinder of all the counts and specifications for trial was prejudicial to him

because the guns taken from Crystal Young's room on November 5, 1986 and the trunk of the car on November 24, 1986 were admitted into evidence and assisted the state in proving that the defendant had feloniously assaulted Danny Fisher and Geneva Barker although guns were not recovered weapons which it could relate to those offenses.

The evidence presented by the state was direct and uncomplicated. The jury demonstrated its ability to segregate the proof on each charge. The jury acquitted the defendant of the drug and gun charges and specifications relating to the events at the State Road Inn on November 5, 1986 and the search of the defendant's son's automobile on November 24, 1986.

The evidence relating to the felonious assault of Fisher was compelling. No evidence was offered to refute Fisher's testimony. The evidence presented by Barker concerning the defendant assaulting her with a weapon was also not refuted. No evidence was offered to refute the credibility of Willie Walker who testified that he removed an item from the defendant at the jail facility which was determined to be cocaine. The cross-appellant has failed to demonstrate that his rights to a fair trial were prejudiced by the trial court's denial of his motion to sever the separate counts for separate trials. We find no abuse of discretion in the trial court's ruling. The cross-appellant's first two propositions of law are overruled.

In his third proposition of law, the cross-appellant contends the trial court erred in denying his request for an overnight continuance to secure the appearance of a material witness under subpoena by the state, and that such denial violated his due process right of compulsory process.

The grant or denial of a continuance is a matter that is entrusted to the broad, sound discretion of the trial judge. *State* v. *Unger* (1981), 67 Ohio St. 2d 65, 21 O.O. 3d 41, 423 N.E. 2d 1078, paragraph one of the syllabus.

The record is undisputed that the defendant was aware of Joseph Cacioppo as a potential witness, but defendant failed to subpoena him for the trial. The record also reveals the trial court had previously continued the trial for nearly one month at the request of the defendant.

A court may not refuse to grant a reasonable recess for the purpose of obtaining defense witnesses when it has been shown that the desired testimony would be relevant and material to the defense. See *Hicks* v. *Wainwright* (C.A. 5, 1981), 633 F. 2d 1146.

Defense counsel failed to proffer to the trial court what the desired testimony of Cacioppo was and how it would have been relevant and material to the defense. Evid. R. 103(A)(2) requires an offer of proof in order to preserve any error in excluding evidence, unless the excluded evidence is apparent in the record. The defendant has failed to demonstrate how he was prejudiced by the trial court's denial of his continuance. The court of appeals properly found no abuse of discretion in the trial court's denial of the defendant's motion. The third proposition is likewise overruled.

The judgment of the court of appeals is reversed as it pertains to its reversal and vacation of the defendant's conviction of felonious assault of Barker. Since the court of appeals failed to address the defendant's third assignment of error that the verdict of the firearm specification on count three was unsupported by sufficient evidence, this matter must be remanded to the court of appeals for resolution of the assignment of error;

in all other respects the judgment of the court of appeals is affirmed.

*Judgment accordingly.*

MOYER, C.J., SWEENEY, HOLMES and DOUGLAS, JJ., concur.

WRIGHT and H. BROWN, JJ., dissent.

JAMES A. BROGAN, J., of the Second Appellate District, sitting for RESNICK, J.

MOYER, C.J., concurring. I concur in the majority opinion and write to emphasize the importance of the conditional language in the syllabus that suggests that additional evidence regarding the actor's intention may enable a jury to find that the act of pointing a deadly weapon at another is a felonious assault. I agree that, generally, the mere act of pointing a deadly weapon at another person does not constitute a "felonious assault" as defined by R.C. 2903.11(A)(2). However, there are circumstances, not in the facts of this case, in which a defendant may, for instance, have engaged in a series of shootings either on the day of the crime in question or under similar circumstances to the act in question. The following two examples should be helpful: (1) the defendant has fired a deadly weapon at the same person on more than one occasion in the past and is now being tried for felonious assault for having pointed a deadly weapon at the same person, with evidence of no other conduct; (2) the defendant is charged with felonious assault for having pointed a deadly weapon at another person, with evidence of no other conduct except that defendant fired a deadly weapon at one or more people on the same day as the incident in question.

In both examples I believe the evidence of defendant's other conduct could be used to show that, although defendant in the incident in question did nothing more than point a deadly weapon at another person, that act constituted a substantial step toward causing physical harm.

H. BROWN, J. Although I agree with most of the legal principles articulated in the majority opinion, I must respectfully dissent as to the application of that law to the facts before us in this case.

I concur in the majority's analysis of *State* v. *Woods* (1976), 48 Ohio St. 2d 127, 2 O.O. 3d 289, 357 N.E. 2d 1059, and the commentary to Section 5.01 of the Model Penal Code. To constitute an "attempt" to commit a crime, the defendant must have taken a "substantial step" towards commission of the crime.

This court did *not* hold in *State* v. *Tate* (1978), 54 Ohio St. 2d 444, 8 O.O. 3d 441, 377 N.E. 2d 778, that the mere pointing of a firearm at a person would constitute "an attempt to cause physical harm to" that person within the meaning of R.C. 2903.11(A)(2).[2] As the majority herein correctly notes, *Tate* dealt solely with the question of whether an unloaded gun used in an assault would constitute a "deadly weapon" as defined in R.C. 2923.11.

The dispositive question in this case is whether Brooks, the appellee, took a "substantial step in a course of conduct planned to culminate in his

---

[2] See, *e.g., State* v. *Sunderland* (Dec. 19, 1985), Cuyahoga App. No. 49950, unreported, wherein the Court of Appeals for Cuyahoga County held to the contrary.

commission of the crime." *Woods, supra,* paragraph one of the syllabus.

The testimony established that Brooks entered the Hub-Lon Lounge in Akron on November 7, 1986. He became involved in an argument with a barmaid. Brooks drew a handgun, pointed it at the barmaid, and threatened to kill her. When the manager of the bar went to call the police, Brooks fled.

These facts do not establish a "substantial step" towards the commission of felonious assault. The majority acknowledges that in drawing a gun and aiming it at the victim, Brooks did not take the substantial step required to constitute an attempt to cause physical harm. The majority finds that the substantial step was taken when Brooks threatened to kill the barmaid. The threat to kill was menacing. However, Brooks was no closer to the commission of an assault than he was before he made the threat. The threat would indicate an "intent" to cause physical harm if Brooks had fired the gun. However, intent to commit a crime is not equivalent to an "attempt" to commit that crime. Similarly, the fact that a volatile exchange occurred does not alter the fact that the only *action* taken by Brooks towards commission of an assault was the drawing and aiming of the handgun. Brooks' conduct presents a clear case of aggravated menacing.[3] It is not an "attempt to cause physical harm to another," and, accordingly, is not felonious assault, attempted murder or aggravated assault.

For the foregoing reasons, I would affirm the decision of the court of appeals.

WRIGHT, J., concurs in the foregoing opinion.

---

[3] R.C. 2903.21 provides:

"(A) No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of such other person or member of his immediate family.

"(B) Whoever violates this section is guilty of aggravated menacing, a misdemeanor of the first degree."