NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0852n.06
Filed: December 14, 2007

**No. 06-4059**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

DARELL NASH, SR., )
)
    Petitioner-Appellee, )
)
v. )
) ON APPEAL FROM THE UNITED
MICHELLE EBERLIN, Warden, ) STATES DISTRICT COURT FOR THE
) NORTHERN DISTRICT OF OHIO
    Respondent-Appellant. )
)
)

**Before: MOORE, ROGERS, and McKEAGUE, Circuit Judges.**

**ROGERS, Circuit Judge.** In this case, the Ohio courts determined that defendant's felonious assault conviction was not against the manifest weight of the evidence, which necessarily implied a finding that his conviction was also supported by sufficient evidence. The federal district court below — on remand from a previous appeal to this court — granted habeas relief on grounds of insufficient evidence as to one element of the crime of felonious assault. Because the state court's determination was an unreasonable application of clearly established federal law, we affirm.

In the previous appeal, we vacated the district court's grant of Nash's petition for a writ of habeas corpus because the district court relied on the state appellate court's statements of fact rather than reviewing the trial transcript. *See Nash v. Eberlin*, 437 F.3d 519 (6th Cir. 2006). After we

remanded the case with instructions to review the state trial transcript, the district court again

granted Nash's petition.

The factual background of this case was set out in our previous opinion as follows:

On December 11, 2001, Connie Nash ("Connie") received a call at the nursing home where she worked from her husband's girlfriend. After finishing her shift at work, Connie came home and found Nash and a friend in the Nashes' kitchen playing cards. Connie told Nash's friend to leave so that she could speak with Nash. As he was standing up, Nash bumped Connie with his chair, and she "started swinging on him." Nash got out of his chair and grabbed Connie, and they began to fight. She tripped over a highchair and fell down. The Nashes' adult son, Darell Nash, Jr. ("Darell Jr."), and their nephew, William Jeter, heard the noise and came up from the basement; they found Connie and Nash screaming at each other.

Nash ran upstairs and then returned with a .9-millimeter handgun.[1] The handgun was loaded. Upon seeing the gun, Darell Jr. grabbed Nash, which caused the gun to fire into the ground. Connie went into the Nashes' daughter's room, and Nash followed her. Darell Jr. again grabbed Nash, and the gun fired into the wall.[2] Nash then put the gun away upstairs and left the house in his car.

Connie called the police, who came to the Nashes' house. Nash called the house while the police were there, and a detective listened in while Darell Jr. spoke with Nash on the phone. According to the detective, Nash stated, "[S]he did it this time.

---

[1] At this point in the narrative, Connie's testimony at trial directly contradicted the original statement she gave to the police on December 11, 2001. Her trial testimony was based on a letter she sent to the police on January 25, 2002, which she claimed to have written to "tell the truth about what really happened." She testified that Nash walked away from her after they were fighting, and she then left the house with the intention of breaking the window of his car. Connie stated that she could not find a brick or rock in the back, so she proceeded to the front of the house to retrieve a tire iron from her truck. At that point, she said that she heard Nash's car start and that he then left. When confronted at trial with her original statement to the police, Connie explained that she was upset with Nash and she wanted to hurt him at the time of the incident, but that she was telling the truth in her January 2002 letter.

[2] In the previous appeal, the State asserted that at this point, "the gun discharged in the direction of Nash's wife," and the State's attorney explained that evidence of this fact was presented to the jury. In making its original habeas decision, the district court was not able to evaluate the accuracy of that assertion because it did not have a copy of the full state-court trial transcript before it. Therefore, we remanded the case with instructions to review the entire trial record. A review of the full record, however, does not indicate that the gun discharged in the direction of Nash's wife.

You can tell her she doesn't have a job any longer because I'm going to F'ing kill her." *State v. Nash*, No. 2002CA00106, 2003 WL 139783, at *1 (Ohio Ct. App. Jan. 13, 2003). Nash also asked Darell Jr. "whether Connie had 'cool[ed] down yet so that he could come home and talk things over.'" *Id*.

Nash gave a statement to the police in which he said "that he went upstairs and got the gun in order to scare his wife." *Id*. At trial, however, he testified that "his 'intention was to take the gun out of the house.'" *Id*. "[Nash], during his testimony, also testified that the handgun went off accidentally and denied making the threats that the Detective overheard him making during the telephone call." *Id*.

Nash was indicted by the Stark County Grand Jury for improperly discharging a firearm at or into a habitation or school safety zone and for knowingly causing or attempting to cause physical harm to Connie Nash by means of a deadly weapon or dangerous ordnance. Both charges had a firearm specification. On March 5, 2002, a jury found Nash guilty on both counts, and he was subsequently sentenced to a total of five years of incarceration. Nash appealed to the Fifth District Court of Appeals of Ohio, which overturned his conviction for discharging a firearm at or into a habitation or school safety zone[3] and upheld his conviction for felonious assault. *Nash*, 2003 WL 139783, at *3. With regard to the felonious assault charge, the state appellate court held that Nash's conviction was not against the manifest weight of the evidence:

> Upon our review of the record, we find that appellant acted knowingly when, after arguing with his wife, he went upstairs to retrieve the gun. As is stated above, appellant told the police that he had retrieved the same in order to scare his wife. We concur with appellee that "[r]eturning to the argument in this situation gives rise to a probable result that the gun may go off."

---

[3]Nash's conviction was based upon the following statute:

(A)     No person, without privilege to do so, shall knowingly do any of the following:
        (1)     Discharge a firearm at or into an occupied structure that is a permanent or
        temporary habitation of any individual ....

OHIO REV. CODE § 2923.161. The state appellate court concluded that conviction pursuant to § 2923.161 was against the manifest weight of the evidence because "there is no evidence that appellant discharged his firearm *at* or *into* a habitation." *Nash*, 2003 WL 139783, at *3 (emphasis added).

*Id.* One judge dissented in part, stating that the facts herein do not support a conviction of felonious assault." *Id.* at *4. (Hoffman, P.J., dissenting in part). Nash filed an appeal with the Ohio Supreme Court, which denied leave to appeal because the case did not involve a "substantial constitutional question." J.A. at 124 (Entry).

On February 3, 2004, Nash filed a petition for habeas relief in federal district court pursuant to 28 U.S.C. § 2254. The habeas petition — which Nash filed pro se — listed one ground for relief: "Felonious assault conviction was against the manifest weight of the evidence." J.A. at 8 (Habeas Pet.). The State filed a return of writ on June 21, 2004, arguing that Nash did not state a cognizable claim for federal habeas review because a manifest-weight-of-the-evidence claim is a matter of state law. The State further asserted that even if construed as a claim based on sufficiency of the evidence, Nash should still not prevail. On July 27, 2004, Nash filed a traverse to the State's return of writ in which he raised the issue of sufficiency of the evidence; he argued that his rights under the Fourteenth Amendment were violated when he was convicted of felonious assault without proof of intent.

A magistrate judge filed a report on November 5, 2004, recommending that habeas relief be denied. On April 1, 2005, the district court granted Nash's § 2254 petition. The district court ordered the State to release Nash from custody "within 30 days of this order." J.A. at 199(J.). Although Nash's manifest-weight-of-the-evidence claim did not raise an issue of federal law, the district court liberally construed his petition to raise a claim based on sufficiency of the evidence. The district court concluded that "[e]ven viewing the facts in the light most favorable to the prosecution, a rational trier of fact could not conclude beyond a reasonable doubt that the petitioner knowingly caused or attempted to cause physical harm to his wife or to anyone else." J.A. at 195 (Op.).

*Nash*, 437 F.3d at 520-22.

On Nash's first appeal, we held that a review of the entire trial transcript was needed because the State made highly significant factual assertions that did not appear in the state appellate court's findings of fact, which the district court had relied upon instead of the full trial record. *See Nash*, 437 F.3d at 523. On remand, the district court reviewed trial transcript and again granted Nash's petition for a writ of habeas corpus. The district court held that a rational trier of fact could not conclude beyond a reasonable doubt that Nash knowingly caused or attempted to cause physical

harm to his wife because there is no evidence that he pointed the gun at his wife or threatened her directly.

As a threshold matter, we first determine that Nash did not procedurally default on his sufficiency of the evidence claim by not presenting it to the Ohio state courts.[4]  Under normal circumstances, habeas relief can only be sought for claims that have been ruled upon in state court. *See* 28 U.S.C. § 2254(b)(1)(A).  On appeal to the Fifth Circuit Court of Appeals of Ohio, Nash argued that his conviction for felonious assault was against the manifest weight of the evidence, but he did not literally argue that there was insufficient evidence to support his conviction. Nevertheless, the sufficiency of the evidence issue was adequately passed upon by the Ohio courts because the determination by the Ohio Court of Appeals that the conviction was supported by the manifest weight of the evidence necessarily implies a finding that there was sufficient evidence.  The Ohio Court of Appeals, for instance, has explained that "'[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency.'  Thus, a determination that a conviction is supported by the weight evidence will also be dispositive of the issue of sufficiency." *State v. Lee*, 814 N.E.2d 112, 115 (Ohio Ct. App. 2004) (citations omitted).  Therefore, the district court properly entertained

---

[4]Nash's habeas petition actually argues that his conviction was against the manifest weight of the evidence, not that it was supported by insufficient evidence.  Even though a federal court is only allowed to review issues of federal law in a habeas proceeding, *see* 28 U.S.C. § 2254(a), and a manifest-weight-of-the-evidence argument is a state-law argument, we interpret Nash's argument to be a sufficiency of the evidence claim because the law calls for the liberal and active construction of pro se claims for relief "to encompass any allegation stating federal relief." *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985) (quoting *White v. Wyrick*, 530 F.2d 818, 819 (8th Cir. 1976)).  As the following analysis demonstrates, the state court's decision on the manifest weight of the evidence subsumed a decision on the sufficiency of the evidence.  Therefore, we interpret Nash's petition as a complaint that the state court erroneously found his conviction to be supported by sufficient evidence.

Nash's sufficiency of the evidence claim because it has been effectively presented to the Ohio courts and was decided by the Ohio Court of Appeals.

A conviction is not supported by sufficient evidence if a rational trier of fact could not have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In this habeas proceeding, however, we are not allowed to conduct a de novo review of the Ohio state court's application of that rule. Instead, we must review its sufficiency of the evidence decision under the highly deferential standard set by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under that statute, Nash can only be granted habeas relief if the Ohio Court of Appeals made an unreasonable application of the *Jackson* standard. *See* 28 U.S.C. § 2254(d)(1); *Getsy v. Mitchell*, 495 F.3d 295, 315-316 (6th Cir. 2007) (en banc). Thus, it is not our duty to determine whether a rational trier of fact could have found that Nash committed the essential elements of felonious assault beyond a reasonable doubt. That was the job of the Ohio Court of Appeals. The task for this court is to determine whether it was objectively unreasonable for the Ohio Court of Appeals to conclude that a rational trier of fact, after viewing the evidence in the light most favorable to the state, could have found that Nash committed the essential elements of felonious assult beyond a reasonable doubt. *See McFowler v. Jaimet*, 349 F.3d 436, 447 (7th Cir. 2003). Applying even this very deferential standard mandated by AEDPA, we conclude that Nash's conviction for felonious assault cannot stand.

Nash was convicted under Ohio Rev. Code § 2903.11(A)(2), which prohibits an individual from causing or attempting to cause physical harm to another by means of a deadly weapon. Because no one was injured in this case, Nash could only be convicted under the "attempt to cause

physical harm" variation of felonious assault. In order to convict under that provision, a jury must find beyond a reasonable doubt that the defendant knowingly engaged in some overt act directed toward executing or accomplishing the assault through the use of a deadly weapon. *See State v. Kline*, 464 N.E.2d 159, 166 (Ohio Ct. App. 1983). As the district court correctly noted, the evidence in this case establishes nothing more than that Nash brought out the gun to scare his wife, that he followed his wife into their daughter's room on the same floor, and that the gun went off while Nash struggled with his son. Based on those facts, it was objectively unreasonable for the Ohio Court of Appeals to find that a rational trier of fact could be convinced beyond a reasonable doubt that Nash knowingly attempted to cause physical harm to anyone through the use of a deadly weapon.

Under Ohio law, it is clear that bringing a gun to an argument and having it go off at a downward trajectory during a struggle, without the gun ever having been pointed at anyone, is not a felonious assault. Indeed, the Ohio Supreme Court has squarely stated that the act of pointing a gun at someone, without further evidence of the actor's intention, is not sufficient evidence for a felonious assault conviction. *State v. Brooks*, 542 N.E.2d 636, 642 (Ohio 1989). Later, the Ohio Supreme Court analyzed what type of further evidence was required under *Brooks*. *State v. Green*, 569 N.E.2d 1038, 1040-41 (Ohio 1991). The Ohio Supreme Court restated that "[t]he act of pointing a deadly weapon at another, without additional evidence regarding the actor's intention, is insufficient to convict a defendant of the offense of 'felonious assault.'" *Id.* at 1041. In *Kline*, the Ohio Court of Appeals ruled in a case that involved a scuffle, in which there *was* some evidence that the gun was pointed at someone, that there was not sufficient evidence of felonious assault, although the lesser offense of aggravated menacing might have been shown. *See Kline*, 464 N.E.2d at 165-

66; *see also State v. Pack*, 674 N.E.2d 1263, 1265-66 (Ohio Ct. App. 1996) (reversing conviction

for felonious assault because jury had been told by prosecutor that recklessness was sufficient for

conviction, where defendant had pointed a loaded gun at someone's chest after firing shots into the

floor and ceiling). If there was insufficient evidence of felonious assault in such cases where a gun

was pointed at someone, then the Ohio Court of Appeals could not reasonably determine that a

rational trier of fact could have found beyond a reasonable doubt that a felonious assault was

committed in this case, in which the evidence does not indicate that the gun was pointed at anyone.

The Ohio Court of Appeals opinion to which we owe deference in this case was concerned

primarily with the reasons for reversing the conviction for discharging a firearm into a home. Only

two paragraphs address the sufficiency of the evidence for felonious assault. One paragraph restated

Ohio law, and the other paragraph reasoned as follows:

> While appellant argues that there is no evidence that he knowingly attempted to
> cause physical harm to his wife, we disagree. Upon our review of the record, we
> find that appellant acted knowingly when, after arguing with his wife, he went
> upstairs to retrieve the gun. As is stated above, appellant told the police that he had
> retrieved the same in order to scare his wife. We concur with appellee that
> "[r]eturning to the argument in this situation gives rise to a probable result that the
> gun may go off." In short, upon our review of the record, we cannot say that the
> jury, by convicting appellant of felonious assault, lost its way so as to create a
> manifest miscarriage of justice.

*State v. Nash*, 2003 WL 139783, *3 (Ohio App. 5 Dist. 2003). There are two potential ways to read

this analysis — as a reinterpretation of Ohio law, or as a finding that the existing requirements for

a felonious assault conviction were satisfied in this case. The former cannot be the correct

interpretation. Where the elements of a state crime are sufficiently clear as a matter of state law, we

cannot automatically uphold a conviction with insufficient proof of one of the elements on the theory that the state court in the very case has eliminated that element as a requirement. It would undermine the federal sufficiency-of-proof requirement to do so.

Here the Ohio Court of Appeals did not explicitly purport to reinterpret the contours of Ohio law. Such a reinterpretation of the law would have amounted to a major change in Ohio law. It is unlikely that such a change would have been intended by the brief analysis of the intermediate appellate court in this case. Under existing Ohio law, it is clear that going upstairs to retrieve a gun cannot establish the necessary intent to meet the requirements of felonious assault. Nor can returning to the argument constitute an attempt to injure someone under the clear contours of Ohio felonious assault law. Ohio law clearly draws the line with respect to "attempt to cause physical harm" felonious assault much closer to intentionally shooting at someone. In previous cases upholding felonious assault convictions involving a discharged gun, the courts have explicitly relied on the fact that the gun was intentionally fired in the direction of another individual. *See, e.g., State v. Salinas*, 706 N.E.2d 381, 389-91 (Ohio Ct. App. 1997); *State v. Owens*, 678 N.E.2d 956, 958 (Ohio Ct. App. 1996); *State v. Gregory*, 628 N.E.2d 86, 90-91 (Ohio Ct. App. 1993). The decision by the Ohio Court of Appeals can therefore only be read as determining that Nash's going to the argument with a loaded gun was sufficient evidence that Nash knowingly shot at his wife. So construed, however, the analysis is not a reasonable application of the federal requirement of proof beyond a reasonable doubt because the evidence does not support such a conclusion. While Ohio courts have the power to define the elements of state crimes, they cannot constitutionally permit conviction without sufficient proof of an element of the crime so defined.

The State on this appeal, however, makes an argument that the record *does* permit a finding that Nash fired the gun in the direction of his wife. The Ohio Court of Appeals, it should be noted, did not rely on this theory, but rather reasoned that Nash's merely going to the argument with a gun provided sufficient evidence that a felonious assault had been committed. In any event, there is no direct evidence in the record that can fairly be read to support a finding that Nash intentionally fired the gun in the direction of his wife. The only pieces of evidence to address the direction in which the gun was fired — i.e., the police statement given by Billy Jeter and the testimony and police statements given by Darell Jr., and Nash himself — all indicated that the gun was pointed downward each time it discharged. LaDonna Nash, who witnessed only the second shot, testified that the gun was pointed downward when it was discharged for the second time. Additionally, all of the testimony from eyewitnesses indicated that the gun was accidentally discharged. The State argues that the following facts permit a reasonable juror to conclude that the gun was intentionally fired at Connie: (1) the second shot was fired in the direction of the doorway of LaDonna's room, and (2) Connie exited through that doorway at some point. The evidence, however, appears not even facially to support the theory. Exhibits 1K and 7G, found on pages 614 and 616 of the Joint Appendix, show that: (1) the second bullet struck a wall that was perpendicular to the wall containing the door in LaDonna's room, and (2) the bullet entered the perpendicular wall almost the full length of that wall away from the doorway, near the wall opposite the doorway. (Exhibit 7G, in particular, shows that the bullet entered the perpendicular wall very near the wall opposite the doorway.)

By allowing the conviction to stand, the Ohio Court of Appeals effectively permitted conviction without proof beyond a reasonable doubt of one of the elements of the offense, namely that Nash knowingly attempted to cause physical harm to another. Such an application of the *Jackson* standard was objectively unreasonable.

For the foregoing reasons, the district court's grant of Nash's petition for a writ of habeas corpus is AFFIRMED.

McKeague, Circuit Judge, dissenting.

I disagree with the majority's conclusion that "the evidence in this case establishes nothing more than that Nash brought out the gun to scare his wife, that he followed his wife into their daughter's room on the same floor, and that the gun went off while Nash struggled with his son." Maj. Op. at 7. Accordingly, I respectfully dissent.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Nash can only be granted habeas relief if the Ohio Court of Appeals made an unreasonable application of the Supreme Court's rule that a conviction is not supported by sufficient evidence if a rational trier of fact could not have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* 28 U.S.C. § 2254(d)(1); *Getsy v. Mitchell,* 495 F.3d 295, 315-36 (6th Cir. 2007) (en banc). Here, the Ohio Court of Appeals made no such unreasonable application.

Contrary to the majority's contention, Ohio law is *not* "clear that bringing a gun to an argument and having it go off at a downward trajectory during a struggle, without the gun ever having been pointed at anyone, is not a felonious assault." Maj. Op. 7. First, the majority's reliance on *State v. Brooks,* 542 N.E.2d 636 (Ohio 1989), is misplaced. While *Brooks* involved a felonious assault arising from a heated argument, the gun was *never* fired, let alone fired *twice*. Indeed, the Ohio Supreme Court stated "[t]he act of pointing of a deadly weapon at another, without additional evidence regarding the actor's intention, is insufficient evidence [for felonious assault]." *Id.* at 639. However, the court also explained that "experience has demonstrated that many homicides and serious assaults occur in the heat of impassioned

12

arguments." *Id.* at 643. The court emphasized that the victim and the defendant were "embroiled in a volatile argument" when the defendant drew a revolver, angrily told her that he would kill her, and only left the area when another person appeared to be calling the police. *Id.* The court held that it could not "say that a reasonable jury . . . could *not* have concluded that the defendant's actions were 'strongly corroborative' of his intent to cause physical harm."[1] *Id.* (emphasis added).

In *Brooks*, the defendant never fired the gun, whereas here, Nash fired it twice.[2] To my mind, firing a gun twice goes well beyond the mere act of pointing a gun. In other words, when a shot is fired (particularly here where two were fired), whether the gun was pointed at anyone arguably is part of the totality of the circumstances, but pointing the gun at the victim is not *required* to establish felonious assault.

To the extent *Brooks* is instructive, it explains that "additional evidence" of intent includes, in particular, a heated argument between the defendant and the victim. Indeed, here,

---

[1]Indeed, guns and domestic disputes are a deadly combination:

Of females killed with a firearm, almost two-thirds were killed by their intimate partners. The number of females shot and killed by their husband or intimate partner was more than three times higher than the total number murdered by male strangers using all weapons combined in single victim/single offender incidents in 2002.

\* \* \*

Access to firearms yields a more than five-fold increase in risk of intimate partner homicide when considering other factors of abuse, according to a recent study, suggesting that abusers who possess guns tend to inflict the most severe abuse on their partners.

American Bar Association Commission on Domestic Violence, Survey of Recent Statistics (collecting sources), http://www.abanet.org/domviol/statistics.html (last visited Dec. 5, 2007) (citations omitted).

[2]The majority's reliance on *Green* and *Kline* is similarly misplaced because neither involved the firing of a gun at all, let alone twice. *See State v. Green*, 569 N.E.2d 1038, 1040-41 (Ohio 1991); *State v. Kline*, 464 N.E.2d 159, 165-66 (Ohio Ct. App. 1983).

like *Brooks*, we have just such additional evidence in the record. By all accounts, the argument between Nash and his wife was heated. It is undisputed that while the argument was still in progress, Nash retrieved a loaded gun, and without the safety engaged, introduced the gun into the argument. Indeed, by Nash's *own* admission, he retrieved the gun to "scare" his wife.

Of course, the jury was entitled to disbelieve his account and infer from the circumstances that his intentions were even more nefarious. J.A. 386-87 (nephew admits that Nash was "breathing hard and [had a] mad face" when he came down the stairs after retrieving the gun); J.A. 597-98 (nephew in police report says Nash's son was saying to his dad "what are you doing" and "put the gun down" and then "wrapp[ed] his arms around his father trying to stop him from shooting anybody"). In any event, a defendant acts knowingly, when, although not intending the result, he is nevertheless aware that the result will probably occur and therefore even assuming that Nash was only intending to "scare" his wife, he can still be found to have acted knowingly. *See State v. Edwards*, 83 Ohio App. 3d 357, 361 (1992).

Moreover, *after* Nash fired the gun during the initial struggle with his son, he did not leave the room, exit the home, or even simply put the gun down. Rather, he followed his wife into their daughter's room and he fired the gun again during a second struggle with his son. J.A. 595-96, 598, 602. When he fired the gun the second time, he was well aware that it was loaded and fully operational. Indeed, this fact alone should put to rest any reasonable argument that there was not sufficient evidence of felonious assault here.[3]

---

[3]Moreover, I note that Nash threatened to kill his wife, albeit through a phone call to his son *after* he exited the premises. Nash called the house while the police were there, and a detective listened in while his son spoke with Nash on the phone. According to the detective, Nash stated, "[S]he did it this time. You can tell her she doesn't have a job

The majority's reliance on *Pack* is similarly unpersuasive. *State v. Pack,* 674 N.E.2d

1263 (Ohio Ct. App. 1996). In *Pack*,

> [t]he evidence at trial established that, on March 11, 1994, the victim, Charles
> Allen, went to the home of appellant with another man, Leyman Pearson, for the
> purpose of buying a handgun which appellant had for sale. The evidence further
> established that after Pearson and appellant discussed the price of the handgun,
> appellant shot the gun into the floor and then into the ceiling. There was
> conflicting testimony as to whether appellant dry-fired the gun at Pearson.
> However, it was clearly established that appellant then pointed the gun at Allen
> while the two men were six inches to twelve inches apart. Allen testified that the
> gun was pointed at his chest. Allen further testified that he then pushed the gun
> away because he did not want to get shot. At that point, the gun went off and
> Allen was shot in the finger.

674 N.E.2d at 1263. The victim in *Pack* testified, "It wasn't out of anger, or anything like that,

he wasn't saying, you know, pointing it at me to do me any bodily harm, he just was pointing it

that way. Do you know what I'm saying?" *Id.* at 1264. In *Pack*, the evidence established that

the defendant had *zero* intent to harm the victim, whereas here, even according to Nash's version

of events, he intended to "scare" his wife during a heated argument, in which he pursued his wife

from one room to another with a loaded gun in his hand and the gun discharged twice. Nash's

reliance on *State v. Mills*, 582 N.E.2d 972 (Ohio 1992), is unpersuasive for the same reason as

*Pack*, namely, no evidence suggested that the defendant intended to harm the victim.

The majority asserts that "[i]n previous cases upholding felonious assault convictions

involving a discharged gun, the courts have explicitly relied on the fact that the gun was

---

any longer because I'm going to F'ing kill her." *State v. Nash*, No.2002CA00106, 2003 WL 139783, at *1 (Ohio Ct. App. Jan. 13, 2003). While Nash's threat arguably might be more probative if the threat occurred before or contemporaneous with the shots he fired, it is some additional evidence of his intent to harm his wife.

intentionally fired in the direction of another individual." Maj. Op. 9 (citing *State v. Salinas*, 706 N.E.2d 381, 389-91 (Ohio Ct. App. 1997); *State v. Owens*, 678 N.E.2d 956, 958 (Ohio Ct. App. 1996); *State v. Gregory*, 628 N.E.2d 86, 90-91 (Ohio Ct. App. 1993)). In fact, those cases cited by the majority support a finding that Nash acted knowingly.

*Salinas* involved a drive-by shooting. *Salinas,* 706 N.E.2d at 383-84. The court relied on a similar drive-by shooting case and found that:

> The similarities between [*State v. Butticci*, No. 95-L-121, 1996 WL 702473 (Ohio Ct. App. November 22, 1996)] and this case are striking. As in *Butticci*, the shooting took place on a January evening at approximately 8:30 to 8:40 p.m., appellant took shots at lighted residential structures, cars were parked in the driveways of these homes, and the occupants were watching television in a living room which faced the street. Moreover, appellant's awareness of the high probability that people were in these homes is evidenced by his statement to Brian Semosky, the day following the shooting, that he hoped no one was "hit or hurt" in the shooting. Here, as in *Butticci,* we conclude that the evidence was sufficient to send the question of appellant's guilt to the jury.

*Id.* at 389. To the extent that a drive-by shooting situation is at all relevant to the outcome in Nash's case, Nash's conduct presents stronger grounds for a finding of felonious assault than in *Salinas.* The defendant in *Salinas* fired shots from a car, fired those shots while at a great distance from the homes, and did not shoot at any specific area within the homes, whereas Nash fired a gun twice during a heated argument in a small house, fired the second shot in an even smaller room within the house, and fired both shots while in close proximity to no less than five of his family members.

In *Owens*, the defendant "claimed that he intended only to scare Kurt Ross when he fired two shots at his vehicle." 678 N.E.2d at 958. In finding that the jury's determination that defendant acted knowingly was substantiated by the evidence, the court explained

> In the case *sub judice*, *appellant shot a gun not just once, but twice*, at Ross's moving car carrying two passengers while they were traveling on an icy expressway. Again, as we stated in the opinion, the risk of physical harm to Kurt Ross and Cynthia Combs under those circumstances was significant. In our humble opinion, the doing of an act which causes a significant risk of harm readily satisfies the required probability of harm.

*Id.* (emphasis added). Here, Nash too argued he only meant to "scare" his wife, but nonetheless fired the weapon twice. Moreover, while Nash might not have aimed the weapon in the direction of his wife, he fired the gun in closer proximity to a larger group of people with arguably more potential for a significant risk of harm than the defendant in *Owens* that fired from a moving vehicle at two victims that were also in a moving vehicle.

In *Gregory*, the defendant "argue[d] that the evidence showed he was drunk, that he did not hit anything, and that he did not shoot at or threaten the officers when he had a better opportunity as they were parked talking to Gates. Therefore, the evidence does not show he acted knowingly." *Gregory*, 628 N.E.2d at 91. While the court rejected the defendant's argument because he "fired multiple gunshots while pointing the gun directly at them," it also explicitly stated that "[t]he shooting of a gun in a place where there is a risk of injury to one or more persons supports the inference that appellant acted knowingly." *Id.* As discussed *supra*, I submit that the shooting of a gun twice in a small house during a heated argument where there is

a significant risk of injury to no less than five people supports the inference that Nash acted knowingly. Nash nor the majority cites any authority that mandates otherwise.

In any event, as the government explains, there is some evidence that Nash actually fired the shot in the bedroom in his wife's general direction. The second bullet went through the wall next to the bedroom door, and Nash's nephew told the police that he had taken Nash's wife from the bedroom out of the house immediately after the second shot. J.A. 423, 391-92, 598, 614 (Ex. 1K), 616 (Ex. 7G). Thus, she would have been between Nash and the door to the room. The jury was entitled to disbelieve the later trial testimony of the witnesses to the shootings given that they were all relatives of Nash that could have been trying to protect him.

Moreover, no "accident" instruction was provided to the jury here nor was there any evidence to suggest the firearm "accidentally" discharged. *See State v. Smith,* No. 62427, 1993 WL 172973, *5 (Ohio Ct. App. May 10, 1993) ("An accident is defined as 'an unfortunate event occurring casually or by chance.'" (citations omitted)). Rather, despite a struggle, the evidence showed that Nash pulled the trigger *twice. See, e.g.*, J.A. 597-98 (nephew in police report explaining that "Darell Nash Sr. fire[d] shot one" and "Darell Nash Sr. fired another shot"). Indeed, during the struggle Nash's son grabbed Nash, *not* the gun. *See, e.g.*, J.A. 595, 597-98, 591. What is more, Nash admitted that when he fired the second shot the gun might have been pointed at an "angle upwards a little bit" or at least that he did not know which way it discharged. J.A. 605.

Nash's conduct is, however, analogous to that of the defendant in *Smith* where the court found sufficient evidence of felonious assault. *See Smith*, 1993 WL 172973, at *7. In that case,

the defendant "was holding a razor, which is certainly a deadly weapon, when he entered the bedroom and continued to hold it during the entire altercation," and "while [the victim] was attempting to leave the home, appellant continued to pursue him, holding the razor." *Id.* In *Smith*, as here, the defendant contended that he was holding the weapon "as a way of letting [the victim] know he did not want him in his home and wanted him to leave"—in other words, to frighten the victim. *Id.* Even if Nash had not fired the gun in his wife's general direction, and even if he had not fired it at all, the facts here would still be comparable to those in *Smith*; the defendant there did not slash at the victim with the razor, but simply followed the victim while carrying a deadly weapon.

Accordingly, I respectfully dissent because the district court's grant of the writ of habeas corpus should be reversed inasmuch as the evidence was sufficient to convict Nash of felonious assault and the district court did not exercise proper deference under AEDPA.