O P I N I O N
Appellants James and Sally Franklin appeal the decision of the Tuscarawas County Court of Common Pleas, Juvenile Division, that granted permanent custody of their two minor children to Appellee Department of Job and Family Services ("Department"). The following facts give rise to this appeal.
Benjamin Franklin, born April 6, 1996, and Ashley Franklin, born October 1, 1998, are the minor children of appellants. The Department first became involved with appellants after Ashley was admitted to Akron Children's Hospital. At the time of her admittance, Ashley had four fractured ribs, a fractured pelvis, was underweight, had non-organic failure to thrive, was dirty, and had apnea. Ashley had also missed four appointments for her cleft palate, which contributed to feeding problems.
The trial court removed the children from appellants' home on February 25, 1999, and placed them in the custody of the Department following a shelter care hearing. The Department filed a complaint on February 26, 1999, in which it alleged the Franklin children were abused, neglected and dependent. Appellants entered admissions to an amended complaint on April 20, 1999, and the trial court entered a finding that Ashley was a neglected child and Benjamin was a dependent child.
On May 19, 1999, the trial court conducted the dispositional hearing. The trial court temporarily placed the children in the custody of the Department. The trial court also adopted a case plan which required the appellants to have anger assessments at Melymbrosia/Pace and follow any recommendations. Appellants were to also have psychological evaluations and complete parent education. Appellants completed these requirements. Appellant James Franklin was referred to grief counseling which he completed. Appellants also completed their anger assessments.
On June 27, 2000, the Department filed an amended case plan that required appellants to attend the Re-Think Program and contact Barb Rice, at the Tuscarawas County Department of Speech, for services for Ashley. Appellants never attended the Re-Think Program and only kept one appointment with Barb Rice. The Department filed another amended case plan on October 19, 2000. This amended case plan was the result of appellants' eviction from their residence. Appellants were both unemployed and were without a stable residence for a period of time. The amendments required appellants to obtain full-time employment and maintain it for six months, to obtain appropriate housing with working utilities, and to stay current with their bills.
Appellants were unable to maintain employment or obtain appropriate housing. At the time of the permanent custody hearing, Appellant James Franklin worked at a brick yard. Appellant Sally Franklin was still unemployed. The parties did have housing. Also, during the scheduled visitations, Appellant Sally Franklin had a difficult time feeding Ashley. Appellant Sally Franklin had poor interaction with both children. The visits did eventually improve and appellants had unsupervised, overnight visits with the children. However, in September 2000, Ashley returned, to her foster home, extremely dirty with diaper rash. As a result, visits were returned to supervised status.
Due to these problems, the Department filed a motion for permanent custody on October 31, 2000. The trial court conducted a hearing on the Department's motion on February 8, 2001. On March 5, 2001, the trial court granted the Department's motion and placed Benjamin and Ashley in the permanent custody of the Department.
Appellants timely filed a notice of appeal and set forth the following assignments of error for our consideration:
 I. A THOROUGH REVIEW OF THE RECORD IN THIS CASE REVEALS THE EVIDENCE DOES NOT JUSTIFY A GRANTING OF PERMANENT CUSTODY OF BENJAMIN AND ASHLEY FRANKLIN TO THE JOBS AND FAMILY SERVICES.
 II. THE JUDGMENT OF THE TRIAL COURT IN GRANTING PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO LAW.
 III. THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION FOR PERMANENT CUSTODY AND ABUSED ITS DISCRETION IN SUSTAINING THE MOTION FOR PERMANENT CUSTODY OF THE JOBS AND FAMILY SERVICES THAT THE PROCEDURES OF OHIO REVISED CODE 2151.414(D) WERE NOT FOLLOWED.
 IV. THE TRIAL COURT COMMITTED AN ABUSE OF DISCRETION BY RESTRICTING THE PARENT IN THE NUMBER OF WITNESSES BEING CALLED.
 I, II
We will address appellants' First and Second Assignments of Error simultaneously as both concern the issue of whether the trial court's decision to grant permanent custody of the parties' two minor children, to the Department, was against the manifest weight of the evidence. For the reasons that follow, we find the trial court's decision is not against the manifest weight of the evidence.
Before a trial court may terminate parental rights, with regard to a child who is neither abandoned or orphaned, it must find by clear and convincing evidence that: (1) it is in the best interest of the child to be placed in the permanent custody of the moving agency, based on an analysis under R.C. 2151.414(D), and (2) that the child cannot be placed with either parent, based on an analysis under R.C. 2151.414(E).
In applying the manifest weight standard of review, our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries
(Feb. 10, 1982), Stark App. No. CA-5758, unreported. Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. (1978), 54 Ohio St.2d 279,281. It is based on this standard that we review appellants' First and Second Assignments of Error.
Under R.C. 2151.414(B)(1), * * *
 the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
* * *
 (a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
In determining the best interest of a child, R.C. 2151.414(D) provides:
 * * * the court shall consider all relevant factors, including, but not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 (5) Whether any of the factors in division (E)(7) to (11) of this section apply in relation to the parents and child.
In the case sub judice, the record established, pursuant to R.C.2151.414(B)(1)(a), that the children have not been abandoned or orphaned and have not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the children cannot be placed with either of the appellants within a reasonable time or should not be placed with the appellants. As to the issue of best interest, the trial court stated that it considered all the factors listed in R.C. 2151.414 and found that it was in the best interest of the children to be placed in the permanent custody of the Department. Judgment Entry, Mar. 5, 2001, at 4.
However, a best interest determination is not sufficient to grant permanent custody. Under R.C. 2151.414(E), the trial court must also consider certain factors in determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. In doing this, the trial court referred to the following factors:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed to continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home;
 (2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 * * * of the Revised Code;
We find the record contains clear and convincing evidence to support the trial court's finding that it was in the best interest to grant the Department's motion for permanent custody and to terminate appellants' parental rights. Geoff Geers, the ongoing case manager for the Department, testified about his involvement with the family. The initial concerns leading to the Department's involvement included: Ashley not wearing an apnea monitor, appellants' failure to seek medical attention to correct her cleft palate, a diagnosed condition of non-organic failure to thrive and healing fractures which had not been reported to any medical personnel and for which there was no logical explanation. Tr. at 18-20.
Mr. Geers testified that appellants failed to comply with subsequent case plan amendments. Specifically, appellants failed to attend the Re-Think Program and only made one contact with Barb Rice regarding speech services for Ashley. Tr. at 24-25. A second-amended case plan required appellants to obtain full-time employment and maintain it for six months and to obtain adequate housing and stay current with their bills. Appellants were unable to comply with either requirement. Tr. at 25.
As to visitation, Mr. Geers testified that initially visitation was problematic because appellants did not relate well to the children and Sally Franklin had a difficult time feeding Ashley. Tr. at 32. Subsequently, visitation improved and was increased to overnight visits. Tr. at 32-33. However, problems developed with the overnight visits. Ashley returned to her foster home, with diaper rash, following a visit to appellants' residence. Tr. at 34. Mr. Geers also observed a disparity of treatment of the children between Benjamin and Ashley. Tr. at 36. Benjamin received considerable attention from appellants while Ashley was ignored. Mr. Geers also testified that relative placement was not available for the children. Tr. at 37-40.
Jackie Goedel, a previous landlord, testified about the problems she had with appellants. Appellants did not pay their rent and Ms. Goedel ultimately evicted appellants. Tr. at 66. Also, appellants would not voluntarily leave the premises until forced to do so by court order. Id. Jneanne Burns, a parent educator from the Department, testified that parent education was done during the course of the visits between appellants and their children. Tr. at 71. Ms. Burns testified that she observed that Ashley was despondent and there was little interaction between appellants and Ashley. Tr. at 73.
Joanne Noretto, Ashley's foster parent, testified about Ashley's condition when she first arrived at her residence. Ms. Noretto also testified that following the extended visits, Ashley was very clingy, suffered from diaper rash and had body odor. Tr. at 8-9. Appellant James Franklin testified that he missed visits from October through November 2000. Tr. at 107. During this time period, appellants had separated due to money issues but reunited shortly thereafter. Id. Appellant James Franklin claims he did not visit his children during this time period because he did not have transportation and he was seeking employment. Tr. at 120.
Appellant Sally Franklin testified that she separated from Appellant James Franklin because she went to live with her father and there was not enough room for Appellant James Franklin to also reside at her father's residence. Tr. at 148-149. Appellant Sally Franklin also denied that Ashley had diaper rash other than on one occasion when Ashley arrived for visitation and she already had it. Tr. at 151-152.
Based upon the foregoing and the entire record in this matter, we find the trial court's decision to grant permanent custody of the children, to the Department, is supported by the manifest weight of clear and convincing evidence.
Appellants' First and Second Assignments of Error are overruled.
 III
In their Third Assignment of Error, appellants contend the trial court failed to follow the procedures contained in R.C. 2151.414(D)(1), (2), (3), (4) and (5). We disagree.
R.C. 2151.414(D)(1) through (5) provides as follows:
 (D) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 * * * or division (C) of section 2151.415 * * * of the Revised Code, the court shall consider all relevant factors, including but not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
The trial court stated in its judgment entry that "[t]hese parents have demonstrated a lack of commitment toward their children and have failed to provide an adequate home for the children at this time and cannot do so within a year of this litigation." Judgment Entry, Mar. 5, 2001, at 4. The trial court heard evidence concerning each and every factor contained in R.C. 2151.414. Further, the trial court stated that "[c]onsidering all the factors listed in ORC 2151.414, the Court finds that it is in the best interest of Ashley and Benjamin Franklin to be placed in the Permanent Custody of the Department of Job and Family Services." Id.
Because the trial court specifically stated that it considered all the factors under R.C. 2151.414, we find appellants' argument lacks merit. We previously addressed this argument and reached the same conclusion in InRe Parker (Apr. 25, 2001), Tuscarawas App. No. 2000 AP 12 0096, unreported and In the Matter of the Schupbach Children (May 6, 2000), Tuscarawas App. No. 2000 AP 01-0005, unreported.
Appellants' Third Assignment of Error is overruled.
 IV
Appellants contend, in their Fourth Assignment of Error, that the trial court committed an abuse of discretion by restricting the number of witnesses appellants called to testify. We disagree.
Specifically, appellants refer to the following exchange between the trial court and counsel for appellants:
 MR. BOHSE: * * * Your Honor, I did have or do have four or five additional witnesses, friends of the family, which would testify as to the kind of care they seen (sic) these parents furnish to their children, Irene Kyle, Velvet Vogel, Sue Smart, Roger Butts. It's my understanding from the sidebar of Counsel with the Court that the Court is ruling that those, or maybe the Court hasn't ruled, but as to whether those are redundant and the Court is not going to allow their testimony.
 COURT: If that's what they're testifying to as you've indicated, yes, I do find them to be redundant. Tr. at 167.
The record indicates that counsel for appellants did not proffer what the testimony of these witnesses would have established. Evid.R. 103(A)(2) specifically provides:
(A) Effect of erroneous ruling
 Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
* * *
 (2) Offer of proof. In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked. Offer of proof is not necessary if evidence is excluded during cross-examination.
Thus, Evid.R. 103(A)(2) requires an offer of proof in order to preserve any error in excluding evidence, unless the substance of the excluded evidence is apparent in the record. State v. Brooks (1989),44 Ohio St.3d 185, 195. In the case sub judice, appellants failed to proffer evidence, and have waived any purported error in this regard. SeeDebacker v. Debacker (Feb. 19, 1999), Hocking App. No. 98 CA 5, unreported, at 3; State v. Kyle (Dec. 12, 1996), Athens App. No. 96 CA 1729, unreported, at 4; and Bentivegna v. Sands (July 9, 1991), Athens App. No. 90 CA 1453, unreported, at 1-2.
Appellants' Fourth Assignment of Error is overruled.
For the foregoing reasons, the judgment of the Court of Common Pleas, Juvenile Division, Tuscarawas County, Ohio, is hereby affirmed.
 ______________________ Wise, J
By: Edwards, P. J., and Boggins, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Juvenile Division, Tuscarawas County, Ohio, is affirmed.
Pursuant to App.R. 24(A)(2), appellants shall pay costs in this matter.