JOURNAL ENTRY AND OPINION
Earline Rouse appeals from a judgment of the juvenile court granting permanent custody of her three minor children to the Cuyahoga County Department of Children and Family Services (CCDCFS). On appeal, she challenges the court's denial of her motion for continuance, maintaining that she did not receive prior written notice of the dispositional hearing and therefore needed the continuance to secure the presence of her witnesses. CCDCFS asserts that the clerk of the juvenile court sent notice of the date and time of the dispositional hearing to both the mother and her attorney, and that the court correctly denied her motion. After careful review of the record, we have concluded that the court properly exercised its discretion when it denied the mother's motion for continuance. Accordingly, we affirm the judgment of the juvenile court.
The record before us reveals that, on February 4, 2000, the juvenile court placed Sean Eubanks (D.O.B. August 14, 1988), Scott Eubanks (D.O.B. April 29, 1990), and Stephen Rouse (D.O.B. July 8, 1994) in the temporary custody of CCDCFS after the court found that the mother neglected these children. Thereafter, on February 7, 2000, CCDCFS filed a complaint in the juvenile court for the permanent custody of these children which included the allegations of drug abuse, neglect and the physical abuse of Stephen.
The juvenile court scheduled the dispositional hearing for December 18, 2000, at 1:30 p.m. The court sent notice of this hearing to all interested parties including the mother at 1569 Trotter Lane in Painesville, Ohio, and to her trial attorney David Leitch at 25000 Country Club Boulevard #300, North Olmsted, Ohio. The file on appeal contains file copies of these notices, dated November 21, 2000. (R. 60c and 60f.)
The court commenced the dispositional hearing on December 18, 2000, and CCDCFS presented the testimony of social worker Demetria Cole. At the end of Ms. Cole's direct testimony, the court adjourned for the day, and all the parties including the mother signed a notice that the hearing would be continued at 9:00 a.m. on next day. (R. 69.)
The court continued the hearing on December 19, 2000, with the cross-examination of Ms. Cole. CCDCFS then presented the testimony of social worker Kimberly Thomas. At the end of her testimony the following exchange took place:
* * *
 MR. LEITCH: If I — if I could, Your Honor, my client has just informed me that some of the witnesses are apparently on their way. I'll be honest with you, — I'm not in a position to call another witness. And if she insists on having this witness, I don't feel I'm in a position to use that witness myself as an attorney. So if she insists on doing that, I would ask that she would be doing it on her own, because I don't feel it's proper for me to do that. I had no idea until she mentioned that to me as —
 THE COURT: Well, I'll tell you what we'll do. The witness is on his way down? Then we'll take a little break. I'm sorry, what we'll do is take a little break. In about — why don't we — can you guys make this about 1:30?
MR. RENTZ: Yes, sir.
THE COURT: Mother, you want that witness to testify?
MS. ROUSE: Yes.
 MR. LEITCH: Your Honor, I'll be honest with you — this case was called at 10:30. I have not heard of any witness until she spoke right now. I am having some difficulty here continuing to represent her, and I don't feel comfortable even if this witness does show up at some point in time — somebody I haven't even talked to or had an opportunity to —
THE COURT: Well, you'll have an hour or so.
 MR. LEITCH: Your Honor, it's my opinion that there is not going to be a witness.
 THE COURT: I'll tell you what, why don't you do this? When the witness comes, interview the witness; get a chance to talk to the witness. If you still feel — then talk to the mother; give her your recommendation.
 And then right after 1:15 or so, we'll wrap it up. We'll wrap it up and there is not much more. I don't presume that the closing arguments are going to take very long, will they?
MR. RENTZ: No, sir.
 THE COURT: And we'll be in a position to make whatever decision right at that point, I hope.
MS. ROUSE: Your Honor, if I would have —
THE COURT: Yes.
 MS. ROUSE: If I would have gotten some mail at my address, knowing that I was coming to court, I would have had the witnesses ready. These people have to work.
THE COURT: I'll tell you what —
 MS. ROUSE: So, I didn't get a letter. I found out accidentally. And this is why I had to let them know (inaudible) at the last minute.
 THE COURT: I'll tell you, I'll tell you what, I'll tell you what — you were here yesterday.
 MS. ROUSE: That's why I said, that's why I had to let them know yesterday.
THE COURT: Okay.
MS. ROUSE: And also (inaudible) —
 THE COURT: We'll have your lawyer — your lawyer can talk to the witness. You've only got one witness coming?
MS. ROUSE: There's two.
 THE COURT: Okay, David, you can talk to them and at 1:30 or so when we get back, you can —
 MR. LEITCH: Can we set a time, Your Honor, if this witness isn't here, — either one, I'm going to make a motion to withdraw again; or we just going to proceed?
 THE COURT: We'll be back here — I'll tell you what — the court's got — we have a commitment to go somewhere at this point. And I think we'll be back, should be back shortly — what time is it now? Ten (10) after 12:00?
MR. LEITCH: Ten (10) after 12:00, Your Honor.
 THE COURT: Ten after 12:00 — let's figure out about 1:30, and then give it a few minutes. By 1:30, will your witnesses be here?
 MS. ROUSE: I'm going to go and call them, Your Honor.
 THE COURT: By 1:30, if they're not here, we'll just go ahead and conclude. Do you follow me?
MS. ROUSE: Okay.
THE COURT: Okay.
(Tr. 31-34.)
When the court reconvened, the mother had not produced her witnesses, and the following colloquy appears in the record:
THE COURT: We have no other witnesses?
 MS. ROUSE: They'll be here tomorrow, Your Honor. They wanted to come from Painesville, and the other two, they'll be — I told them to come, and they'll be here all together.
THE COURT: What say you, John? David?
 MR. LEITCH: Your Honor, I'm not even going to — I don't know how to respond yet. Apparently she is making a motion to continue, and it's being done on her own behalf, not mine.
 THE COURT: Well, Earline, you cannot be playing games with the court. You're going around in circles, and tomorrow, we have a full docket. So you wouldn't be able to even get here, and further, you told the court that these people were on the way here to court.
MS. ROUSE: It's my mother.
 THE COURT: I'll tell you what. We'll just, at this stage, I think we just about —
 MS. ROUSE: But I didn't get a letter, Your Honor, or I would have had — this is where I talked to them and we went to lunch.
 THE COURT: This case has been going on for over a year and a half, a long time. A long time. So basically, I think — I think at this point we're just going to go ahead with our closings.
 David, did she indicate to you that she was going to have witnesses at all yesterday or at any time?
 MR. LEITCH: She has told me periodically that there were people coming, and they just never arrived. I can't specifically recall the name yesterday.
THE COURT: Sure.
 MR. LEITCH: We certainly didn't talk about it in depth if it was done. But I'm not denying that she might have mentioned she was — she mentioned something yesterday to me (inaudible) —
 THE COURT: I don't know what these witnesses — I don't know what these witnesses would produce, what type of testimony. As far as I'm concerned, I think that we've just about seen the end of this case. Do you want to file an ending — closing remarks at this time?
* * *
(Tr. 34-36)
On December 26, 2000, the court ordered the children committed to the permanent custody of CCDCFS. From that order, the mother filed a timely appeal with this court, raising the following assignment of error for our review:
 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN REFUSING TO ALLOW THE APPELLANT A MINIMAL AND REASONABLE CONTINUANCE OF ONE DAY TO PRODUCE HER WITNESSES AT A PERMANENT CUSTODY HEARING WHERE THE APPELLANT HAD NOT RECEIVED PRIOR WRITTEN NOTICE OF THE HEARING TIME AND WAS THEREFORE UNABLE TO SUBPOENA OR OTHERWISE MAKE PRIOR ARRANGEMENTS FOR HER WITNESSES TO BE PRESENT.
The mother urges that she did not receive prior written notice of the dispositional hearing, and therefore, the court should have continued the permanent custody hearing to the next morning so that she could present the testimony of her witnesses. CCDCFS points out that the court did send notice to the mother and her attorney of the hearing date and time, 1:30 p.m. on December 18, 2000, and that after the hearing adjourned on the first day, the mother signed a notice that the hearing would be continued at 9:00 a.m. the next morning.
Juv.R. 23, which sets forth the standard for granting continuances, provides:
 Continuances shall be granted only when imperative to secure fair treatment for the parties.
The grant or denial of a continuance is a matter that is entrusted to the broad, sound discretion of the trial judge. State v. Unger (1981),67 Ohio St.2d 65, syllabus. As stated by the court in Unger:
 * * * "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied."
 Appellant urges us to adopt, in reviewing the trial court's exercise of discretion, a balancing test which takes cognizance of all the competing considerations. We wholeheartedly agree. Weighed against any potential prejudice to a defendant are concerns such as a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice. In evaluating a motion for a continuance, a court should note, inter alia: the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case. See United States v. Burton, supra; Giacalone v. Lucas, supra.
Id. at 67-68.
After carefully examining the record in this case and applying the factors set forth in Unger, we have concluded that the juvenile court properly exercised its discretion when it denied the mother's request for a continuance.
Further, the mother in this case failed to make an offer of proof of the anticipated testimony of her witnesses, and therefore, waived any error in this regard on appeal. A similar situation in a criminal context occurred in State v. Brooks (1989), 44 Ohio St.3d 185, where at the trial level, the court denied the defendant's request for an overnight continuance to secure the appearance of a material witness. During appeal, the Supreme Court
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES D. SWEENEY, P.J. and JAMES J. SWEENEY, J. CONCUR.
 ____________________________ TERRENCE O'DONNELL, JUDGE