JOURNAL ENTRY AND OPINION
Appellant, Edward Valenta, is appealing his conviction for two counts of attempted aggravated murder. For the following reasons, we affirm in part, reverse and vacate in part and remand.
Anthony Kratsas testified that he worked with appellant at Parma Pets. Appellant told Kratsas that he was upset with appellant's girlfriend, Crystal. In June of 1998, appellant asked Kratsas if he knew of any poisons that could hurt someone seriously. After that, Kratsas would avoid the subject. In June 1999, Dan Garrity told Kratsas that appellant said he wanted to kill Crystal. Kratsas contacted appellant's sister, Tracy Valenta. Kratsas believed that after he spoke to Tracy, appellant would stop talking about murdering Crystal. One week later, Garrity said appellant wanted to hire someone to commit the murder. Kratsas contacted the police.
Daniel Garrity testified that he worked at Parma Pets. Appellant started talked about ways to kill Crystal. Appellant offered Garrity money and some reptiles if he would kill Crystal. Garrity refused.
Subsequently, appellant told Garrity about one time when his girlfriend had passed out drunk. Appellant did not say he tried to get her drunk on that occasion, just that they had been drinking. Appellant stayed the night at his girlfriend's place. Appellant said she was sleeping so soundly, he could have started a fire and killed her. When appellant first said this, Garrity did not think he was serious. Appellant first mentioned the fire idea some time between January and June 1999.
Susequently, appellant mentioned the fire idea again. Appellant said he would light a fire when she was drunk, and lie down in front of the door to stop her from leaving. When appellant said this, Garrity thought he was serious. Appellant said he put cardboard boxes in Crystal's room because they were flammable. On another occasion, shortly thereafter, appellant said he would, perhaps, suffocate Crystal with a pillow and then burn the house down. Soon after this statement, the police were contacted.
Garrity agreed to have the police record a telephone conversation between himself and appellant. Garrity agreed to tell appellant he knew of a hit man. The hit man actually was Detective Wischmeier of the Parma Police Department.
The taped phone conversation was as follows: Garrity said that he met a man at the Burger King who would do what appellant wanted. Appellant asked whether Dave Toth was going to do it. Garrity said Toth was just messing with him. Garrity offered to give the man appellant's pager number. Appellant did not want to give out his pager number. Appellant asked Garrity to get the man's number, or arrange a meeting. Garrity asked appellant about the fire idea. Appellant said the one time, Crystal did not wake up because she had not slept the previous night. She has been drunk a few times after that, but she kept waking up. This conversation took place in mid-June or July, 1999.
Garrity testified that appellant said he went to Burger King twice, but did not find anyone matching the description of the hit man.
Dave Toth testified that appellant called him in April 1999. Appellant said he had some snakes which Toth might be interested in purchasing. Appellant started talking about his personal life. Appellant said he wanted to kill his girlfriend. Toth did not know appellant very well, and did not know if appellant was serious.
Crystal Rosenbaum testified that she lived with appellant on and off. The last time they lived together was in the summer of 1998. After that, appellant would come over to see his son. Appellant would have sex with Crystal and then leave. In July 1999, appellant took her out to a bar. On cross-examination, Crystal said she could not remember the exact date, but it was some time in the summer of 1999. Appellant did not usually take her anywhere. Appellant ordered her two drinks for every drink he had. The bartender commented that appellant was trying to get Crystal drunk. Usually, appellant disapproved of her drinking. They went back to her home. Appellant spent the night, which was unusual.
Officer Pat Brown of the Parma Police Department testified that Kratsas contacted him some time in June 1999.
Detective James Wischmeier of the Parma Police Department testified that he interviewed Kratsas, Garrity, Dave Toth, Crystal Rosenbaum and appellant in connection with this case. Wischmeier learned that appellant would try to give Crystal alcohol or drugs, to get her so she would not realize what was going on. Wischmeier did not specify how he learned this information. Appellant admitted that he had asked four people to help him kill Crystal. He admitted he borrowed money in order to hire someone to do the job, but he never actually paid money to anyone. He did not intend to actually go through with the murder.
Appellant was found guilty of two counts of attempted aggravated murder, but not guilty of the third count of attempted aggravated murder. He was sentenced to three years on each count, to run consecutively.
 I.
Appellant's first assignment of error states:
 MR. VALENTA'S RIGHTS UNDER ARTICLE I SECTION 16 OF THE OHIO CONSTITUTION AND THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION WERE VIOLATED AND HE WAS ENTITLED TO A CRIM.R. 29 ACQUITTAL WHEN HIS CONVICTIONS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE.
When reviewing a challenge to the sufficiency of evidence, an appellate court must view the evidence in a light most favorable to the prosecution and determine if any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259. The elements of aggravated murder are: the offender purposely, with prior calculation and design, caused the death of another. R.C. 2903.01(A). Attempt occurs when the defendant purposely engaged in conduct which, if successful, would result in the commission of the offense. R.C. 2923.02.
Attempt involves more than the mere intent to commit a crime, and is more than preparation for the crime. State v. Woods (1976),48 Ohio St.2d 127. Attempt occurs if the defendant takes a substantial step in a course of conduct planned to culminate in commission of the crime. Id. To constitute a substantial step, the conduct must be strongly corroborative of the actor's criminal purpose. Id. The overt acts of the defendant must convincingly demonstrate a firm purpose to commit a crime. Id.
Mere solicitation, without the actual hiring of a hit man, does not constitute a substantial step in the commission of an attempted murder. See Annotation (1973), 54 A.L.R.3d 612, sections 7-8, 36-38. The acts of requesting someone to commit a murder and giving him a gun, setting up a meeting with a hit man, and paying the hit man $200 are mere preparations. State v. Dapice (Summit App. 1989), 57 Ohio App.3d 99. These acts are not sufficiently proximate to the crime intended and do not constitute attempted aggravated murder. Id.
In this case, appellant solicited people to kill his girlfriend, but did not hire anyone. No payment was made. Appellant's actions of soliciting a hit man were mere preparations, and did not constitute substantial steps toward an aggravated murder.
There was no evidence that appellant took substantial steps to poison his girlfriend. There was evidence that appellant took substantial steps to either suffocate Crystal or burn her to death.
Appellant told Garrity that he was thinking of killing Crystal by setting the house on fire when she was intoxicated. Appellant also said that he put cardboard boxes in Crystal's room, because they were flammable. Appellant made these statements before the police were called in June 1999. Crystal testified that in July of 1999, appellant got her drunk. Crystal was not sure of the date, but it was some time in the summer of 1999. Normally, he disapproved of her drinking. He also spent the night, which he did not do normally. Appellant stated in the tape-recorded phone call that the fire idea would not work because Crystal kept waking up.
The evidence must be unequivocal that the defendant intended to commit the particular crime. State v. Brooks (1989), 44 Ohio St.3d 185 . Appellant's actions, along with appellant's statements of his intent, can show that appellant intended to commit the crime. See State v. Green (1997), 122 Ohio App.3d 566; Woods, supra.
Appellant's getting Crystal drunk, observing to see if she woke up when intoxicated, and putting boxes in her room can be considered substantial steps in the commission of an aggravated murder. In conjunction with appellant's statements, these acts are strongly corroborative of appellant's intent to murder Crystal. These acts convincingly demonstrate that appellant had a firm purpose to commit murder.
The evidence is sufficient for a reasonable trier of fact to find one count of attempted aggravated murder, but not two counts. One of these counts is therefore vacated.
Accordingly, this assignment of error is sustained in part and overruled in part.
 II.
Appellant's second assignment of error states:
 THE APPELLANT'S CONVICTION AND SEPARATE CONSECUTIVE SENTENCES FOR TWO COUNTS OF ATTEMPTED AGGRAVATED MURDER WAS IN VIOLATION OF R.C. 2941.25.
Our disposition of appellant's first assignment of error renders this assignment of error moot. We note that the court did not make the required findings on the record in order to impose consecutive sentences. See R.C. 2929.19(B)(2)(c),(e); R.C. 2929.14(E)(4); State v. Edmonson (1999), 86 Ohio St.3d 324, 326; State v. Gonzalez (Mar. 15, 2001), Cuyahoga App. No. 77338, unreported.
Accordingly, this assignment of error is overruled as moot.
One count of attempted aggravated murder is reversed and vacated. One count of attempted aggravated murder is affirmed. This case is remanded to the trial court, to vacate the sentence on the second count.
It is ordered that appellee and appellant split the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed in part, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence, and further proceedings in accordance with this opinion.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 _______________ ANN DYKE, JUDGE:
DIANE KARPINSKI, A.J., AND COLLEEN CONWAY COONEY, J., CONCUR.