DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Sandusky County Court of Common Pleas which following a jury trial, found appellant, David W. Rozanski, guilty and sentenced him to a term of imprisonment. For the reasons stated herein, this court affirms the judgment of the trial court.
The following facts are relevant to this appeal. Appellant was indicted on one count of felonious assault in violation of R.C. 2903.11(A)(2); one count of kidnaping in violation of R.C. 2905.01(B)(2); one count of abduction in violation of R.C. 2905.02(A)(2) and one count of unlawful possession of a dangerous ordnance in violation of R.C. 2923.17(B). All counts stemmed from an incident on August 3, 2001, in which appellant held two guns to his wife's head. Appellant entered a plea of not guilty by reason of insanity ("NGRI") on August 31, 2001. A NGRI evaluation was ordered and the trial court granted appellant's request for a second NGRI evaluation. Appellant was found competent to stand trial.
 {¶ 2} Appellant's trial commenced on January 24, 2002, and continued on January 25, 2002. On January 25, 2002, at the close of the state's case, counsel for appellant made a motion for acquittal pursuant to Crim.R. 29. The trial court overruled the motion. On January 25, 2002, the jury found appellant guilty of felonious assault and not guilty of kidnaping and abduction. On February 27, 2002, appellant was sentenced to a term of two years of incarceration. Appellant filed a timely notice of appeal.[1]
 {¶ 3} Appellant sets forth the following two assignments of error:
 {¶ 4} "Assignments Of Error
 {¶ 5} "Assignment Of Error No. 1
"The State Presented Insufficient Evidence To Support David Rozanski's Conviction For Felonious Assault.
 {¶ 6} "Assignment Of Error No. 2
 {¶ 7} "David Rozanski's Conviction For Felonious Assault Is Not Supported By The Manifest Weight Of The Evidence."
 {¶ 8} The court will address appellant's first and second assignments of error together as they are interrelated. In his first assignment of error, appellant argues that there was insufficient evidence to support his conviction of felonious assault. In his second assignment of error, appellant argues that his conviction of felonious assault is against the manifest weight of the evidence. This court finds no merit in these assignments of error.
 {¶ 9} The standards for review of these assignments of error are well established. In State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, the Supreme Court of Ohio stated:
 {¶ 10} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
In State v. Thompkins (1997), 78 Ohio St.3d 380, paragraph two of the syllabus, the Ohio Supreme Court stated that "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." The court also noted:
 {¶ 11} "* * * In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. (Citation omitted.)" Id. at 386.
 {¶ 12} In contrast to sufficiency, the court stated the following in regard to weight of the evidence:
 {¶ 13} "* * * Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find thegreater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.'" (Citation omitted.) (Emphasis added by Court.) Id. at 387. The Ohio Supreme Court also noted that when an appellate court reverses a verdict as against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony. Id. The Court then cited State v. Martin (1983), 20 Ohio App.3d 172, 175, and quoted the following:
"The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id.
 {¶ 14} In her concurrence, Justice Cook noted the following in regard to appellate review of a question involving manifest weight:
 {¶ 15} "In contrast, in deciding whether a conviction is against the manifest weight of the evidence, an appellate court determines whether the state has appropriately carried its burden of persuasion. A court reviewing questions of weight is not required to view the evidence in a light most favorable to the prosecution, but may consider and weigh all of the evidence produced at trial. The only special deference given in a manifest-weight review attaches to the conclusion reached by the trier of fact. * * *" Id. at 390.
 {¶ 16} Appellant asserts that his conviction for felonious assault was based upon insufficient evidence and was against the manifest weight of the evidence when the evidence presented was that although he placed a loaded gun to the head of another and stated "There's no other way," there was no threat. Appellant was convicted of felonious assault, a violation of R.C. 2903.11(A)(2) which provides:
 {¶ 17} "(A) No person shall knowingly do either of the following:
 {¶ 18} "* * *
 {¶ 19} "(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."
Appellant argues that there was no evidence that he ever indicated an intention to harm Cindy and cites State v. Brooks (1989),44 Ohio St.3d 185, syllabus, and State v. Green (1991), 58 Ohio St.3d 239, syllabus, in support of his argument. In Brooks, the Ohio Supreme Court held:
 {¶ 20} "The act of pointing a deadly weapon at another, without additional evidence regarding the actor's intention, is insufficient evidence to convict a defendant of the offense of "felonious assault" as defined by R.C. 2903.11(A)(2)." 44 Ohio St.3d 185, at syllabus. In Brooks, the defendant pointed a gun at a woman and stated "Bitch, I will kill you." The Court concluded that there was sufficient evidence to support a conviction of felonious assault.
 {¶ 21} In Green, the Ohio Supreme Court held:
 {¶ 22} "The act of pointing a deadly weapon at another coupled with a threat, which indicates an intention to use such weapon, is sufficient evidence to convict a defendant of the offense of "felonious assault" as defined by R.C. 2903.11(A)(2). (State v. Brooks [1989],44 Ohio St.3d 185, 542 N.E.2d 636, syllabus, explained and followed.)"58 Ohio St.3d 239, syllabus. In Green, Ohio Supreme Court additionally stated:
 {¶ 23} "It can be readily gleaned from our holding in Brooks, supra, that the additional evidence needed to uphold a felonious assault charge could include verbal threats as perceived by a reasonable personunder the circumstances. Thus, the act of pointing a deadly weapon at another coupled with a threat, which indicates an intention to use such weapon, is sufficient evidence to convict a defendant of the offense of `felonious assault'
 {¶ 24} as defined by R.C. 2903.11(A)(2). (Emphasis added.)" Id. at 241.The Court noted that the defendant aimed a fully functional, loaded rifle at the officer's head, with the hammer cocked, and shouted "`If you don't have a warrant get the fuck out of my house.'" The Court concluded:
 {¶ 25} "Clearly, under these circumstances a reasonable jury, properly instructed, could have concluded that defendant's actions were strongly corroborative of his intent to cause physical harm to the officers by means of his deadly weapon." Id. at 242.
 {¶ 26} Cindy Rozanski, appellant's wife, and an officer from the Sandusky County Sheriff's Office testified as to the events of August 3, 2001. Cindy testified that appellant woke her several times during the night by walking in and out of the bedroom; woke her at approximately 2:30 a.m. and stated that he had been attacked by a dog and that there were "cats all over the place;" when she investigated, she saw nothing. She testified that appellant woke her again later and she asked him to let her sleep but he stated he wanted to hypnotize her; while he attempted this, appellant pinched her cheek and poked her in the eye. When she cried and her dog barked, appellant swung his fist at the dog but did not make contact. When Cindy stated that she was taking her dog and son and leaving, appellant loaded her pistol, chambered a round and took a shot at her dog but missed; then appellant chased her dog around the dining room table, aiming at the dog. Cindy testified that she got appellant to stop aiming at her dog but then appellant put her gun to his head. When Cindy pleaded with appellant to stop, appellant stated that "there is no other way." Then appellant put her gun to Cindy's head and stated "A pound and a half is all that's left." Cindy testified that she was afraid and that she thought that she was not going to be around much longer to help her son. Appellant pointed her gun to Cindy's head for a couple of minutes. She testified that she thought she was dead. After she pleaded with appellant, he put her pistol back to his head and told her to leave the room. Cindy testified that she told him she was not going to let him do that to himself. Cindy testified that she eventually got her pistol when appellant laid it on a table and she hid it.
 {¶ 27} After she told appellant that she had hidden her pistol, appellant obtained his pistol and loaded it. Cindy testified that appellant then put his pistol to his head and repeated "there was no other way." Cindy testified that she took that to mean that they were all going to die and as a threat that appellant was going to kill her. Cindy testified that appellant then put his pistol to her head and repeated "A pound and a half is all that's left." Cindy testified that they struggled for the pistol and then appellant began pushing her to leave the room. Cindy eventually left the room and woke her son. She testified that she would not leave without her son and that she had no way to get out of the house because appellant was by the back door and could see the front door. She testified that while she was with her son, she heard a gunshot, thought appellant had shot himself but found him standing with his pistol at his side. At this point in time, Cindy called 9-1-1; when the 9-1-1 dispatcher called her back, appellant came to the phone, looked at the caller ID which said Sandusky County but not the whole word of Sheriff; Cindy testified that she thought she was dead at that point. The sheriff arrived and Cindy and her son left the residence.
On cross-examination, Cindy admitted that prior to that evening nothing caused her to believe appellant was going to harm or hurt her. She also admitted that at the preliminary hearing she testified on cross-examination that appellant did not threaten her; she qualified that response by saying that appellant did not say "he was going to flat out kill her."
 {¶ 28} Deputy Michael McGuire of the Sandusky County Sheriff's Office testified about his arrival at appellant's residence; how he used a loud speaker to ask appellant to come out; how he observed Cindy leave the residence in her nightgown and her son jump out the window; and how appellant came out of the residence in response to McGuire's request over the loud speaker. He also testified that after appellant was arrested, McGuire spoke with Cindy and he could tell from her emotions that she was relieved. He identified photographs of the bullet holes in the kitchen floor. He also testified that appellant's gun was loaded with hollow point bullets which McGuire stated do more damage when they meet flesh.
 {¶ 29} After thoroughly reviewing the entire record, we conclude that any rational trier of fact could have found that the essential elements of felonious assault were proven beyond a reasonable doubt. Furthermore, the conviction is not against the manifest weight of the evidence. After thoroughly reviewing the entire record, weighing the evidence and all reasonable inferences, this court cannot say that the jury clearly lost its way and created such a manifest miscarriage of justice.
Accordingly, appellant's first and second assignments of error are found not well-taken.
 {¶ 30} On consideration whereof, the court finds that the defendant was not prejudiced or prevented from having a fair trial, and the judgment of the Sandusky County Court of Common Pleas is affirmed. It is ordered that appellant pay court costs for this appeal.
 JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, P.J., Richard W. Knepper, J., and Arlene Singer,J., CONCUR.
[1] Appellant's original appeal was dismissed due to the failure of his first appointed counsel to file a brief. On September 13, 2002, new appellate counsel filed an entry of appearance and a motion to reopen. On October 8, 2002, this court granted appellant's motion to reopen his appeal.