DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Michael Whitmire, appeals his convictions out of the Summit County Court of Common Pleas. This Court affirms.
 I. {¶ 2} On May 2, 2007, Whitmire was indicted on two counts of domestic violence in violation of R.C. 2919.25(A), felonies of the third degree; and two counts of domestic violence in violation of R.C. 2919.25(C), misdemeanors of the first degree.[1] He pled not guilty to the charges, and the matter proceeded to trial before a jury on September 4, 2007. On September 11, 2007, the trial court issued a journal entry declaring a mistrial as of September 7, 2007, discharging the jury without prejudice to the prosecution, permitting defense counsel to *Page 2 
withdraw as counsel of record and appointing alternate defense counsel. The trial court remanded Whitmire to the Summit County jail to await trial on October 22, 2007.
 {¶ 3} On October 22, 2007, immediately prior to the commencement of trial, defense counsel orally moved the court to dismiss the case on the grounds of double jeopardy. The State opposed such dismissal, asserting that the mistrial had been granted at the joint request of Whitmire and his attorney. The trial court denied the motion to dismiss and the matter proceeded to trial.
 {¶ 4} At the conclusion of trial, the jury found Whitmire guilty of all four counts of domestic violence. The trial court sentenced Whitmire to one year in prison on each of the felony counts and six months in jail on each of the misdemeanor counts, with all sentences to be served concurrently. Whitmire timely appeals, raising three assignments of error for review. This Court consolidates two assignments of error and considers the assignments out of order to facilitate our review.
 II. ASSIGNMENT OF ERROR III "THE TRIAL COURT ERRED IN RETRYING THE APPELLANT AS THE SECOND TRIAL WAS BARRED BY DOUBLE JEOPARDY WHEN THE FIRST TRIAL RESULTED IN A MISTRIAL."
 {¶ 5} Whitmire argues that his retrial was barred by double jeopardy because his first trial ended in a mistrial. This Court disagrees.
 {¶ 6} Whitmire cites State v. Morgan (1998), 129 Ohio App.3d 838, in support of his argument that dismissal on double jeopardy grounds is necessary because the trial court's journal entry granting a mistrial does not indicate the basis for ordering the mistrial. TheMorgan court, however, noted that "[w]hile R.C. 2945.36 requires that the trial court enter on the journal its *Page 3 
reasons for mistrial, it is sufficient if the record supports the trial court's reasons for doing so." Id. at 842, citing Hines v. State (1873),24 Ohio St. 134, paragraph two of the syllabus. In this case, Whitmire failed to provide a transcript of the first trial. App.R. 9(B) requires the appellant to order from the court reporter any portion of the transcript which he deems necessary for the determination of assigned errors. "In the absence of a complete record, an appellant court must presume regularity in the trial court's proceedings." State v.Tillman (1997), 119 Ohio App.3d 449, 454.
 {¶ 7} Whitmire further relies on State v. Widner (1981),68 Ohio St.2d 188, for the proposition that a defendant may not be retried unless there is a manifest or high degree of necessity for ordering the mistrial, or "the ends of public justice would otherwise be defeated." Id. at 189, quoting Arizona v. Washington (1978), 434 U.S. 497. However, both Morgan and Widner are distinguishable from the instant case because each involved a situation in which the trial court sua sponte granted a mistrial. Furthermore, Arizona involved a situation in which the trial court granted a mistrial upon the State's motion without consent of the defendant.
 {¶ 8} This Court has held:
 "[O]nce jeopardy attaches, a defendant has a right to expect that the trial will proceed to conclusion. However, even when a trial has not ended in either a conviction or acquittal, retrial of the accused is not automatically barred. Generally, retrial is permitted whenever a mistrial is declared at the request of or with the consent of the defendant. 21 American Jurisprudence 2d (1981) 504, Criminal Law, Section 286." State v. Juchum (May 26, 1993), 9th Dist. No. 2186-M.
 {¶ 9} In this case, the trial court's journal entry granting the mistrial further ordered that defense counsel was permitted to withdraw and that alternate counsel was thereby appointed. In addition, immediately prior to the retrial, the State asserted that the mistrial was granted at the joint request of Whitmire and his attorney due to a breakdown in the attorney-client relationship. *Page 4 
Whitmore's new counsel did not dispute this. The record indicates that the trial court granted the mistrial with the consent of Whitmire. Accordingly, there was no requirement for the State to establish either manifest necessity for the mistrial or that the ends of public justice would otherwise be defeated. As retrial was permitted after the defendant consented to the mistrial, the trial court did not err by denying Whitmire's motion to dismiss on the basis of double jeopardy. Whitmire's third assignment of error is overruled.
 ASSIGNMENT OF ERROR I "APPELLANT'S CONVICTIONS ON FOUR COUNTS OF DOMESTIC [VIOLENCE] WERE [AGAINST] THE MANIFEST [WEIGHT] OF THE EVIDENCE."
 ASSIGNMENT OF ERROR II "THE TRIAL COURT ERRED IN FAILING TO GRANT APPELLANT'S [CRIM.R] 29 MOTION TO DISMISS THE FOUR DOMESTIC VIOLENCE CHARGES FOLLOWING THE STATE'S CASE."
 {¶ 10} Whitmire argues that his domestic violence convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. Specifically, Whitmire argues that the State failed to prove that he intended to cause the victims bodily harm or that the victims suffered harm or fear of harm. This Court disagrees.
 {¶ 11} Crim.R. 29 provides, in relevant part:
 "(A) The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case."
 {¶ 12} A review of the sufficiency of the State's evidence and the manifest weight of the evidence adduced at trial are separate and legally distinct determinations. State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600. "While the test for sufficiency requires a determination of *Page 5 
whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Id., citing State v. Thompkins (1997), 78 Ohio St.3d 380,390 (Cook J., concurring). When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. State v. Jenks (1991),61 Ohio St.3d 259, 279.
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus.
 {¶ 13} A determination of whether a conviction is against the manifest weight of the evidence, however, does not permit this Court to view the evidence in the light most favorable to the State to determine whether the State has met its burden of persuasion. State v. Love, 9th Dist. No. 21654, 2004-Ohio-1422, at ¶ 11. Rather,
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 14} This Court has stated that "[s]ufficiency is required to take a case to the jury[.] *** Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462.
 {¶ 15} Whitmire was charged with domestic violence in violation of R.C. 2919.25, which provides: *Page 6 
 "(A) No person shall knowingly cause or attempt to cause physical harm to a family or household member.
 "(C) No person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member."
 {¶ 16} R.C. 2901.22(B) states:
 "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
Physical harm includes "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). Force is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C.2901.01(A)(1). The Ohio Supreme Court has held:
 "[a] `criminal attempt' is when one person purposely does or omits to do anything which is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime. To constitute a substantial step, the conduct must be strongly corroborative of the actor's criminal purpose." State v. Brooks (1989), 44 Ohio St.3d 185, 189-90, quoting State v. Woods (1976), 48 Ohio St.2d 127, paragraph one of the syllabus.
 {¶ 17} At trial, Anthony Murdock II, testified that on April 16, 2007, he was eighteen years old and living with his younger siblings and his mother, Cynthia Murdock, at her home at 2047 20th Street. He testified that Whitmire was his mother's boyfriend at the time. Anthony testified that his mother and Whitmire had been in a relationship for approximately three years, but that Whitmire was not living in Cynthia's home.
 {¶ 18} Anthony asserted that he did not wish to prosecute Whitmire. He admitted that he had failed to appear for court proceedings in this matter on two prior occasions and that he was arrested as a result of his failure to appear. Nevertheless, Anthony testified as follows. *Page 7 
 {¶ 19} On April 16, 2007, Cynthia and Whitmire had just returned from the grocery store when the two of them got into an argument after Whitmire knocked over the groceries in the driveway, then threw some ice at Anthony's younger sister. Anthony stopped the argument and Whitmire went outside and poured juice on the amplifier in Anthony's car. Anthony pulled Whitmire off the car and Whitmire "smacked" his face.
 {¶ 20} Anthony testified that he did not recall calling the emergency 911 operator that day. The State played a recording of a 911 call from April 16, 2007. Anthony identified his voice as the caller on the recording. In the call, Anthony told the 911 operator, "My mom's boyfriend just hit me in the face." He then identified Whitmire by name, described his physical appearance and told the operator in which direction Whitmire was walking when he left. Anthony told the operator that Whitmire did not like the police and that "he'll probably try to fight them."
 {¶ 21} The State admitted a victim statement form executed by Anthony, in which he described the incidents on April 16, 2007. Anthony wrote that Whitmire choked his mother when she came outside to stop Whitmire from pouring juice on the car stereo. Anthony wrote that he pulled Whitmire off his mother and Whitmire then hit him in the face and left. At trial, Anthony testified that it was possible that Whitmire did not choke his mother because he only observed Whitmire from behind. He testified that he merely saw his mother's head move as Whitmire stood in front of her. Further, at trial, Anthony testified that Whitmire only hit him after he had first grabbed and choked Whitmire.
 {¶ 22} The State admitted into evidence two photographs of Anthony's face, taken by the police after the incident. The photographs indicate red marks on both sides of his face, as well as on one side of his neck. Anthony testified that Whitmire caused that redness to his face. He *Page 8 
further admitted that he believed on April 16, 2007, that Whitmire had caused physical harm to his mother.
 {¶ 23} Cynthia Murdock testified that she lives at 2047 20th Street with her three children. She testified that Whitmire is a friend and that they lived together and contributed jointly to support the household. She described their relationship as an intimate one. Cynthia testified that she loves Whitmire and that she does not want to prosecute him.
 {¶ 24} Cynthia testified that her eleven-year old son called 911 on April 16, 2007, because he was scared because his mother, sister and Whitmire were yelling. Cynthia testified that she was not aware that Anthony also called 911. Cynthia testified regarding the incident as follows: Whitmire put a tray of ice cubes in the sink, and one bounced out and flew by Cynthia's thirteen-year old daughter. That resulted in Cynthia, her daughter and Whitmire "yelling and screaming." Her younger son called 911 and hung up. The 911 operator called back and spoke with Cynthia, who reported that there was no problem.
 {¶ 25} Cynthia denied seeing anyone touch anyone else on April 16, 2007. She denied seeing Whitmire throw ice at her daughter or pour juice on Anthony's car stereo. She denied that Whitmire choked or pushed her. In fact, Cynthia denied that Whitmire ever laid his hands on her. She admitted however, that she gave a statement to the police on September 20, 2005, that Whitmire assaulted her at that time. She testified that, while she did not know with what crime he might have been charged or whether he was convicted of anything, she remembered that a temporary protection order was issued as a result of her report to the police. In addition, Cynthia testified at trial as follows:
 "Q. Did your son Anthony ever get between you and Mr. Whitmire when you were arguing?
 "A. Did he get between us? *Page 9 
 "Q. Yes.
 "A. Yes, he does that."
Cynthia then testified, however, that she and Whitmire do not really ever argue.
 {¶ 26} Officer Aaron Hanlon of the Akron Police Department ("APD") testified that he and his partner, Officer Hill, were dispatched to a domestic fight call at 2047 20th Street, Akron, Summit County, Ohio, on April 16, 2007. He testified that they were working out of separate cars and that Officer Hill got to the house before he did. Upon learning that the male suspect had left the scene, Officer Hanlon testified that he responded to Battles Avenue where Whitmire was reported to be walking. Officer Hanlon testified that he stopped Whitmire. Officer Hanlon then handcuffed Whitmire, placed him in the backseat of his cruiser and drove to the 20th Street address.
 {¶ 27} Officer Hanlon testified that Officer Hill spoke with other people at the scene, while he stayed in the cruiser with Whitmire. The officer testified that Whitmire was screaming, cussing, "bouncing around," and behaving in a hostile manner. The officer testified that Whitmire referred to Cynthia as a "lying bitch." Officer Hanlon testified that he checked for warrants and Whitmire's prior history as he waited for Officer Hill.
 {¶ 28} Officer Hanlon testified that, after conferring with Officer Hill, he called for a wagon to take Whitmire to jail for the offense of "domestic violence previous." The officer explained that that meant that Whitmire was going to be charged with domestic violence and that he had a previous conviction for the same offense. Officer Hanlon identified Whitmire in court. Finally, he testified that no paramedics were called to the scene.
 {¶ 29} Officer Jason Hill of the APD testified that he responded to a domestic dispute call at 2047 20th Street on April 16, 2007, after the 911 operator received two phone calls. He *Page 10 
testified that Anthony Murdock was standing on the sidewalk when he arrived. He testified that Anthony appeared upset and angry and he reported that he had been involved in a fight with his mother's boyfriend. Anthony described his mother's boyfriend and noted the direction in which he had left. Officer Hill left to look for the suspect.
 {¶ 30} Officer Hill testified that he saw that Officer Hanlon had apprehended Whitmire, so he returned to the scene to question witnesses. Officer Hill testified that he questioned Anthony Murdock who told him that Whitmire was living with his family. The officer testified that Anthony described the incident as follows: An argument erupted among Whitmire, Cynthia Murdock and Cynthia's daughter after the daughter was hit with some ice cubes. Anthony got between his mother and Whitmire, then Whitmire went outside and began to do something to Anthony's vehicle. Cynthia followed, while Anthony went outside to "go after" Whitmire. Whitmire began choking Cynthia. Whitmire struck Anthony in the face as Anthony attempted to protect his mother. Anthony did not indicate that he at any time physically assaulted Whitmire. Officer Hill took photographs of Anthony that show red marks on his face and neck. He further photographed the driveway where smashed eggs and an unknown liquid lay. He learned during his investigation that Whitmire threw groceries in that area.
 {¶ 31} Officer Hill testified that Anthony was cooperative with him and indicated that he wanted to prosecute Whitmire. The officer testified that Anthony agreed to put his statement in writing, and that the written statement matched Anthony's verbal statement.
 {¶ 32} Officer Hill testified that he spoke with Anthony in the presence of his mother Cynthia Murdock. He testified that Cynthia agreed with Anthony's rendition of the events, although she declined to put a statement in writing and she indicated that she did not wish to *Page 11 
prosecute Whitmire. Officer Hill testified that Cynthia explained Whitmire's actions that day as a result of his fatigue and agitation.
 {¶ 33} Officer Hill testified that, based on the investigation, he and Officer Hanlon believed that Whitmire had engaged in acts of domestic violence. Officer Hill testified that he signed the complaints against Whitmire on behalf of the victims under authority of law.
 {¶ 34} Although there was some conflicting evidence in this case, this Court will not disturb the jury's factual determinations because the jury is in the best position to determine the credibility of the witnesses during trial. State v. Crowe, 9th Dist. No. 04CA0098-M,2005-Ohio-4082, at ¶ 22. In addition, this Court will not overturn the trial court's verdict on a manifest weight of the evidence challenge only because the jury chose to believe certain witnesses' testimony over the testimony of others. Id.
 {¶ 35} Based on a thorough review of the record, this Court finds that this is not the exceptional case, where the evidence weighs heavily in favor of Whitmire. A thorough review of the record compels this Court to find no indication that the jury lost its way and committed a manifest miscarriage of justice in convicting Whitmire of domestic violence. The weight of the evidence supports the conclusion that Whitmire choked Cynthia Murdock and hit Anthony Murdock, thereby causing physical harm to household members. The weight of the evidence further supports the conclusion that Whitmire threw ice at another household member, threw groceries and poured juice on Anthony's car stereo while in an agitated state, and screamed at various household members, thereby using threat of force to knowingly cause Cynthia and Anthony Murdock to believe that he would cause them imminent physical harm. Accordingly, Whitmire's convictions for domestic violence are not against the manifest weight of the evidence. Having found that Whitmire's convictions are not against the weight of the evidence, *Page 12 
this Court further necessarily finds that there was sufficient evidence to support the jury's verdicts. Whitmire's first and second assignments of error are overruled.
 III. {¶ 36} Whitmire's assignments of error are overruled. His convictions out of the Summit County Court of Common Pleas are affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Whitmore, J. Moore, J. Concur.
[1] After the presentation of all the evidence at trial, and at the request of defense counsel, the trial court added a fifth count of disorderly conduct. Although the jury found Whitmire guilty of this additional count, it is not an issue raised on appeal. *Page 1