[Cite as *State v. Cervelli*, 2017-Ohio-7531.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
HURON COUNTY

State of Ohio

Appellee

v.

William Cervelli

Appellant

Court of Appeals No. H-16-029

Trial Court Nos. CRB 1600361A
CRB 1600361D
CRB 1600361E
CRB 1600361F

**<u>DECISION AND JUDGMENT</u>**

Decided: September 8, 2017

* * * * *

G. Stuart O'Hara, Jr., Law Director, City of Norwalk, and
Scott M. Christophel, Assistant Law Director, for appellee.

Reese M. Wineman, for appellant.

* * * * *

**JENSEN, P.J.**

## I. Introduction

{¶ 1} Appellant, William Cervelli, appeals the judgment of the Norwalk Municipal

Court, ordering him to serve 120 days in jail following a jury trial in which he was found

guilty of two counts of aggravated menacing and two counts of unlawful restraint. Finding no error, we affirm.

## A. Facts and Procedural Background

{¶ 2} On March 14, 2016, a complaint was filed with the trial court, charging appellant with two counts of aggravated menacing in violation of R.C. 2903.21(A), misdemeanors of the first degree, and two counts of unlawful restraint in violation of R.C. 2905.03(A), misdemeanors of the third degree. The complaint stemmed from an incident that occurred on the evening of March 13, 2016. On that date, appellant noticed that his home had been "toilet-papered." It was later discovered that four minor boys, C.J., W.S., N.F., and M.S., had toilet-papered appellant's home after being driven to the property by N.F.'s sister, K.F. Appellant notified his son, Adam Cervelli, and the two proceeded to clean up the toilet paper from the property. After reentering his home following the cleanup, appellant remained alert because he suspected that the boys may return.

{¶ 3} Approximately two hours later, K.F. drove the boys back to appellant's home, where they discovered that the toilet paper had been cleared from the property. W.S., N.F., and M.S. then agreed that they would toilet-paper the property a second time. After exiting K.F.'s vehicle, W.S. and N.F. approached appellant's property. As they arrived onto the premises, appellant confronted them with a flashlight that was mounted to the barrel of his shotgun. Appellant instructed W.S. and N.F. to enter his home. Meanwhile, M.S., who had separated from W.S. and N.F. after exiting K.F.'s vehicle, ran

2.

back to the vehicle that was parked nearby. M.S. was visibly shaken upon his return to the vehicle. Appellant then directed Adam to alert the authorities, and he proceeded to flag down K.F. When K.F. pulled into appellant's driveway, she got out of her vehicle and entered appellant's home. Shortly thereafter, K.F., W.S., and N.F. exited the home and went back to K.F.'s vehicle, where they remained until police arrived on the scene.

{¶ 4} Following subsequent investigation into the details of the foregoing incident, the state filed the aforementioned complaint in the trial court. A jury trial ultimately commenced on July 13, 2016, at which the state presented the testimony of C.J., M.S., K.F., N.F., W.S., and two police officers who responded to appellant's home on the evening of the incident. At the close of the state's case-in-chief, appellant moved the court for an acquittal under Crim.R. 29, arguing that the state failed to introduce evidence of a threat of serious physical harm as required to establish the charges of aggravated menacing. The court denied the motion, and the matter proceeded to appellant's case-in-chief.

{¶ 5} For his part, appellant called Adam, as well as his second son, K.C., to testify. Additionally, appellant took the stand in his own defense. At the close of appellant's case-in-chief, appellant renewed his motion for acquittal under Crim.R. 29. This time, however, appellant argued that he should be acquitted on the unlawful restraint counts because the evidence established that he was privileged to detain N.F. and W.S. in his home while they awaited the arrival of the police. Once again, the trial court denied appellant's Crim.R. 29 motion. Thereafter, the jury found appellant guilty of two counts

3.

of aggravated menacing and two counts of unlawful restraint. The trial court continued the matter for sentencing at a later date.

{¶ 6} At sentencing, the trial court sentenced appellant to 180 days in jail on each of the aggravated menacing charges, to be served concurrently, with 60 days suspended on each count. The court also imposed a 60-day jail sentence for each of the unlawful restraint counts, but suspended those sentences and placed appellant on probation for two years. Moreover, the court ordered appellant to pay court costs as well fines of $250 and $200 as to each of the aggravated menacing and unlawful restraint charges, respectively. It is from this order that appellant filed this timely appeal.

## B. Assignments of Error

{¶ 7} On appeal, appellant assigns the following errors for our review:

First Assignment of Error – The trial court below abused its discretion and improperly denied the defendant's motion, at the close of the entire case, to grant a dismissal, pursuant to Criminal Rule 29, of the charges against William Cervelli for unlawful restraint.

Second Assignment of Error – The jury's verdict, following the court's failure to grant the Criminal Rule 29 motion and allowance of the jury to consider the unlawful restraint charges against the defendant resulted in a verdict that was against the manifest weight of the evidence concerning the aggravated menacing charges against the defendant/appellant.

4.

Third Assignment of Error – The trial court erred in imposing a four month sentence on William Cervelli based upon the fact that William Cervelli had never been convicted of any (not even minor misdemeanor) criminal offense prior to the incident that led to his conviction and, most significantly, based upon the fact that the alleged victims provoked the events that led to the charges brought against William Cervelli.

## II.  Analysis

### A.  Denial of Appellant's Crim.R. 29 Motion

{¶ 8} In his first assignment of error, appellant argues that the trial court erred in denying his Crim.R. 29 motion for acquittal as to the unlawful restraint charges.

{¶ 9} A motion for acquittal under Crim.R. 29(A) is a challenge to the sufficiency of the evidence. *See State v. Brinkley*, 105 Ohio St.3d 231, 2005-Ohio-1507, 824 N.E.2d 959, ¶ 39.  The denial of a motion for acquittal under Crim.R. 29(A) "is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37.

{¶ 10} In reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the prosecution and determine whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."  (Internal citations omitted.) *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997).  In making that determination, the appellate court will not weigh the evidence or assess the credibility of the witnesses. *State v. Were*, 118 Ohio St.3d 448,

5.

2008-Ohio-2762, 890 N.E.2d 263, ¶ 132. Whether there is sufficient evidence to support a conviction is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶ 11} Relevant here, appellant was convicted of two counts of unlawful restraint in violation of R.C. 2905.03(A), which provides:

> (A) No person, without privilege to do so, shall knowingly restrain another of the other person's liberty.

In order to establish the offense of unlawful restraint, the state must prove, beyond a reasonable doubt, that (1) the defendant's act was willful, (2) the conduct substantially interfered with another's liberty, (3) the victim knew of the restraint or was harmed as a result of the restraint, (4) the restraint was total, (5) the defendant exercised any force, or express or implied threat of force including a reasonable apprehension of force, and (6) the defendant acted without legal justification. *State v. Williams*, 75 Ohio App.3d 293, 299, 599 N.E.2d 377 (8th Dist.1991).

{¶ 12} The evidence introduced at trial establishes that W.S. and N.F. were approached by appellant while they were standing in his front yard. W.S. and N.F. testified that appellant pointed his shotgun at them during the encounter and informed them that the gun was loaded. Appellant did not dispute that the shotgun was pointed at the boys. Indeed, he acknowledged that he was using the flashlight to illuminate the boys, and further conceded that the flashlight was mounted on the shotgun and pointed in the same direction as the barrel. Further, N.F. testified that appellant "started to yell. He

6.

said, I'm the CIA and FBI combined, and he said take one false move and I'll blow your brains out." Appellant then instructed N.F. and W.S. to enter his home, and closed the door behind them. The boys testified that they were in fear of being shot and did not feel as though they were free to refuse to comply with appellant's instructions. During his testimony, appellant acknowledged that he did not feel threatened by N.F. and W.S.

{¶ 13} If believed, the foregoing evidence was sufficient to establish the offense of unlawful restraint. In his appellate brief, appellant contends that the state failed to introduce sufficient evidence to establish that he acted without legal justification. He insists that he was justified in detaining the boys based on the fact that they are minors and were therefore not permitted to be outside without an adult due to the local curfew that was in effect at the time of their detention. Notably, appellant cites no authority in support of his contention that an adult may detain a child who is outside during curfew. Our research has revealed no such authority. Thus, we find that the state's evidence was sufficient to establish that appellant was not justified in holding N.F. and W.S. at gunpoint and threatening to "blow [their] brains out" if they failed to comply with his instruction to enter his home.

{¶ 14} Accordingly, appellant's first assignment of error is not well-taken.

### B. Manifest Weight of the Evidence

{¶ 15} In his second assignment of error, appellant argues that his convictions for aggravated menacing were against the manifest weight of the evidence.

**{¶ 16}** When reviewing a manifest weight of the evidence issue, we sit as a "thirteenth juror." *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. That is, we review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. *Id.* Our role is to determine "whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.* We reverse a conviction on manifest weight grounds for only the most "exceptional case in which the evidence weighs heavily against the conviction." *Id.* at 387.

**{¶ 17}** Regarding aggravated menacing, R.C. 2903.21(A) provides, in pertinent part: "No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family."

**{¶ 18}** Appellant argues that the evidence presented at trial demonstrates that he did not intend to cause physical harm to W.S. and N.F. Having considered the record before us, we find that appellant's convictions for aggravated menacing were not against the manifest weight of the evidence. In *State v. Brooks*, 44 Ohio St.3d 185, 192, 542 N.E.2d 636 (1989), the Supreme Court of Ohio stated that "the pointing of a deadly weapon would undoubtedly justify a jury in concluding that the accused had committed the offense of 'aggravated menacing' as defined by R.C. 2903.21." As noted above, several of the state's witnesses testified at trial that appellant pointed his shotgun at W.S. and N.F. Appellant does not dispute that fact. Moreover, appellant acknowledged at trial

8.

that his actions on the night of the incident placed W.S. and N.F. in fear of physical harm. On cross-examination, the following colloquy occurred:

Q. Well, you understand that anybody who sees you holding [the flashlight], they're going [to] see that and see a gun?

A. they're going to get the hell scared out of them.

Q. You understand that; right?

A. Yes.

Q. And the children, when you were holding that on them, had the hell scared out of them. You agree with that?

A. I would say, yes, but it was not to scare – it was not to cause bodily harm, like they said.

{¶ 19} This testimony, paired with the testimony of the victims in this case that appellant threatened to shoot them in the head if they did not comply with his orders, belies his argument that he did not intend to cause serious physical harm to W.S. and N.F., or at least place them in reasonable fear of such harm.

{¶ 20} Accordingly, appellant's second assignment of error is not well-taken.

### C. Sentencing Issues

{¶ 21} In his third and final assignment of error, appellant argues that the trial court erroneously sentenced him to 120 days in jail in light of the absence of a criminal record and the fact that those who were responsible for toilet-papering his home were merely ordered to write an essay and were not otherwise punished for their conduct.

9.

**{¶ 22}** We examine misdemeanor sentences under an abuse of discretion standard of review. *State v. Cook*, 6th Dist. Lucas No. L-15-1178, 2016-Ohio-2975, ¶ 18-19. An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

**{¶ 23}** When a trial court imposes a sentence pursuant to a misdemeanor conviction, the trial court shall examine the "purposes and principles" of R.C. 2929.21 and "sentencing factors" under R.C. 2929.22. When a misdemeanor sentence is imposed within the statutory limits, a reviewing court will presume the trial judge followed the statutes, unless there is evidence to the contrary. *Cook* at ¶ 18, citing *State v. Townsend*, 6th Dist. Lucas No. L-01-1441, 2002-Ohio-4077, ¶ 6.

**{¶ 24}** Here, the trial court's 120-day sentence on each of the aggravated menacing counts was within the statutory limits for misdemeanors of the first degree. R.C. 2929.24(A)(1). Accordingly, we presume the sentence was proper, absent evidence to the contrary. Appellant provides no such evidence. Rather, appellant argues that he should have received a lesser sentence in light of the gentle manner in which C.J., W.S., N.F., M.S., and K.F. were treated. We find no merit to this argument. Indeed, the acts committed by these individuals, namely toilet-papering appellant's home, did not constitute aggravated menacing or unlawful restraint and were therefore appropriately treated differently than the acts committed by appellant.

10.

**{¶ 25}** At sentencing, the trial court explained that it considered the arguments advanced by the state and defense counsel at sentencing. The court then went on to state that it had "thought long and hard" about an appropriate sentence for appellant that would ensure the safety of the community. On this record, we find that the trial court did not abuse its discretion in sentencing appellant to jail for 120 days.

**{¶ 26}** Accordingly, appellant's third assignment of error is not well-taken.

### III. Conclusion

**{¶ 27}** For the foregoing reasons, the judgment of the Norwalk Municipal Court is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.

James D. Jensen, P.J.

Christine E. Mayle, J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE